108 So.2d 761 (1959)
Joe SMITH, Appellant,
v.
Julia Mae SMITH, Appellee.
Supreme Court of Florida.
February 4, 1959.
*762 Edward C. Flood, Bartow and William B. Holland and James McDowell, of Holland & McDowell, Winter Haven, for appellant.
Chas. F. Chastain, of Oxford & Oxford, Lakeland, for appellee.
THORNAL, Justice.
Appellant Joe Smith, who was defendant below, seeks reversal of a decree which established a tenancy in common in certain real estate in favor of appellee Julia Mae Smith.
The only point to determine is whether the evidence supports a constructive trust in favor of the appellee.
In 1947, without going to the trouble of obtaining a license or securing the benefit of clergy, Joe and Julia Mae assumed what would otherwise have been a marital relationship. They lived together as husband and wife and became known as such to the community and generally proclaimed to the world that they were such. At the outset Julia Mae was unaware of the fact that Joe's position was encumbered by a living wife from whom he had never been divorced. Somewhere along the line, however, she received this information. Nevertheless, she did not permit this fact to interfere in any fashion with the continuation of her meretricious relationship with Joe. Finally in 1956 Julia Mae made a trip to Georgia. Upon her return to the abode of the parties, Joe locked her out, refused her admittance and announced that the romance had ended.
Being dissatisfied with such a conclusion to the affair, Julia Mae instituted the present litigation. By her complaint it was admitted that her relationship with appellant Joe was completely illegal. There was no contention that a common-law marriage had been established for the obvious reason that such was legally impossible because of the existence of the first wife. Julia Mae contended that during the nine years of her relationship with Joe she contributed all that she earned to the acquisition of a house and some land together with the furnishings. She was the beneficiary of an insurance policy on the life of her mother. The proceeds of this policy after paying funeral expenses went into the acquisition of the house. This amounted to about $900. During the citrus season she earned $40 per week working at a canning plant. When she was not engaged in canning citrus juices, a beneficent government paid her $20 per week in the form of Unemployment *763 Compensation. These earnings from employment and the perquisites for unemployment likewise were used to help defray the cost of living. Admittedly the amounts which Julia Mae spent for the mutual living expenses of the parties or in the acquisition of the property were uncertain and indefinite. The property was acquired in Joe's name alone. Out of this situation the Chancellor had the view that Julia Mae was entitled to a one-half interest in all of the property which had been acquired in Joe's name during the nine-year period that the parties lived together. Reversal of this decree is now sought.
The appellant contends that the evidence is inadequate to establish the existence of a constructive trust in favor of the appellee.
The appellee contends that the decree of the Chancellor is just and in good conscience should be affirmed.
We are here confronted with a situation in which good morals would offer no brief in behalf of either party. In fact, if it were possible we would be inclined to dismiss them both with the Shakespearean denunciation "A plague o'[n] both your houses!" However, we are compelled by precedent to reverse the decree of the Chancellor. We do so reluctantly because the appellant Joe is lucky that he isn't in jail for the crime of adultery and in our view the manner in which he concluded the affair is reprehensible. By the same token the appellee Julia Mae has little in the way of good morals to commend her to the conscience of equity. She knowingly assumed an illegitimate relationship with the appellee at the outset. When she learned of the existence of a wife, she took no steps to correct the situation. She continued what amounted to no more than a "turpentine camp wedding"  a highly flexible and unstable arrangement. The evidence here obviously could not support a common-law marriage. It does not support a joint adventure because there is no suggestion of an agreement to acquire the property as joint adventurers. The only possible basis upon which relief could be granted, if at all, would be on the theory of the existence of a constructive trust.
We have held that one who asserts the existence of a constructive trust must establish it by proof to the exclusion of all reasonable doubt. A mere preponderance of the evidence is insufficient. Tillman v. Pitt Cole Company, Fla. 1955, 82 So.2d 672; Wadlington v. Edwards, Fla. 1957, 92 So.2d 629. In a case such as this it is necessary that the claimant establish the amount of money that went into the alleged trust corpus and then show the fraud or ill faith upon which equity can construct an interest in the property to the extent of the contribution made to the cost of acquisition. Here, the Chancellor admittedly with some justice to support him, decreed that the appellee had an undivided one-half interest in the property. The evidence in our view falls far short of meeting the standard of conclusiveness required to establish a constructive trust. We think the instant case is controlled by our decision in Cannova v. Carran, Fla. 1957, 92 So.2d 614, and on the basis of that decision the decree will have to be reversed.
Except for the balance of the insurance proceeds, the amount contributed by appellee to the acquisition of the property is indefinite. The fact that she contributed to defraying mutual living expenses would not in and of itself create an interest in the property. There is evidence that Julia Mae joined in the execution of mortgages on the property. The indebtedness had been practically liquidated when appellant discarded her for a new flame. We think that under the circumstances the appellee should be given a further opportunity to establish her claim with more specific evidence. Therefore, in reversing the final decree we remand the cause for further proceedings consistent with this opinion so that the appellee may, if she is able to do *764 so, tender any further evidence in support of her contention that a constructive trust should be decreed.
It is so ordered.
TERRELL, C.J., and THOMAS, HOBSON and DREW, JJ., concur.