## Moore *v.* Moore, Appellant.

Argued April 11, 1962. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*J. R. Vlha,* with him *Henry Mustin,* for appellant.

*Carl Brandt,* with him *Brandt, Riester, Brandt & Malone,* for appellee.

OPINION BY WOODSIDE, J., June 13, 1962:

Along with the granting of a bed and board divorce, the Court of Common Pleas of Allegheny County directed the defendant, Harry J. Moore, to pay alimony to Elizabeth M. Moore in the sum of $9000 per year in monthly payments of $750 each, and the balance of plaintiff's counsel fees in the sum of $3000. (Counsel previously received $1700). The defendant appealed from the order setting the amount of alimony and counsel fees. The divorce decree is not being contested before us.

The defendant had been engaged in the numbers business, a form of illegal lottery. When the parties lived together, the plaintiff helped her husband in the illegal business and had a fairly accurate idea of the income which was derived therefrom. After the parties separated, the defendant was arrested, and from the number of numbers found on him at that time, and from other information, his wife calculated his income to be $30,000 a year. The defendant introduced income tax returns for the last two years prior to the hearing. These returns, signed by both him and his wife, indicate that the parties together had an income of only about one-third of the wife's present estimate of the defendant's income.

The trial court is the finder of the facts. It could infer from all of the evidence that the defendant had been in the numbers business, that he had had an income of $30,000 per year obtained from this unlawful activity, and that in addition to his regular income he had access to substantial sums of cash for his personal use.

The trial court based its order upon a finding that the defendant had been engaged for many years in writing "numbers" and that he was still making daily collections of numbers slips along the route he had previously worked, and that his income therefore could be reasonably estimated at $30,000 a year.

An order for alimony relates to an obligation to be met in the future. Thus, it is clear that the court's order constitutes a division of anticipated income to be realized from expected future unlawful activity. It is against public policy to base a court order of support upon the assumption that the defendant will violate the law in order to acquire the necessary funds to pay it. To base an order on anticipated unlawful conduct not only recognizes, but also encourages, a specific future violation of the law. It assumes law enforcement to be so impotent that it will allow the continuous and persistent violation of the law by a specific person in a specific manner, already known to the court. The court should not speculate upon a future income from a continuous and persistent career of vice and criminality and on the basis of this speculation order a division of the anticipated spoils of iniquity. *King v. King,* 79 Neb. 852, 113 N.W. 538 (1907) ; 139 A.L.R. 231.

The plaintiff argues that an order should be made on the basis of anticipated illegal income because federal income tax is imposed upon illegally obtained income. The analogy is not valid. The income tax is imposed upon the fruits of a crime already committed; it does not anticipate and encourage future violations.

A support order may not be based upon the assumption that continuous unlawful pursuits will provide the anticipated income.

This rule does not imply that a defendant in a support action is relieved from supporting his wife and children because his income has been obtained solely from illegal pursuits. A defendant who has been earning his income from illegal pursuits is presumed to have an earning capacity in legal pursuits which can be the basis for an order, even though there is no evidence that he ever engaged in lawful pursuits.

Neither does the rule imply that the party asking for support must always prove the source of the de-

fendant's income. The claimant can establish through the defendant's expenditures, without proving the source of the money, that he has a substantial income upon which an order may be based.

Nor does the rule imply that the defendant's estate composed of, or arising out of, illegally obtained funds should be ignored in making a support order.

There is evidence in this case that the defendant has been able to produce substantial sums of cash for the payment of automobiles, real estate and other purchases and expenses. The court could infer from the evidence that he has available to him thousands of dollars to meet such expenses as counsel fees. It is also evident that the defendant, even though he has been engaged in illegal pursuits, is not without ability to earn a fair income from some legal occupation. In other words, he has an estate and he has earning capacity.

Although a support order itself must be mathematically precise, the evidence to support it need not be. Indeed in many support actions the trial court can do little more than guess at what the future income of the defendant will be. The future is full of imponderables. We can obtain some guides on what may happen by examining the defendant's past earnings, occupations, savings, spendings and activities, but this information has limited value, particularly in a case like this.

Although the guides to a fair order are limited, nevertheless it is evident that unless we are to assume that the defendant will continue unmolested in illegal pursuits netting him $30,000 a year, there is no justification for an order of $750 per month. Even assuming the continuance of his illegal pursuits, there is some indication that the order would be high. Both parties agreed to an order of $400 per month temporary alimony, plus certain payments connected with the property in which the plaintiff was residing. This agree-

ment was entered into when the wife had an accurate idea of what the income of the defendant was.

From a careful examination of the record, it appears to us that $500 a month is the highest order that can be justified.

We find no abuse of discretion in the fixing of counsel fees. There are no fixed rules as to the amount to be allowed for counsel fees. The value of counsel's services and the wife's necessities must be considered in determining a fair and just amount which the husband should pay. There must also be considered the husband's ability to pay, the separate estate of the wife, and the character, situation and surroundings of the parties. 12 P.L.E. Divorce §154.

The Act of May 2, 1929, P.L. 1237, 23 P.S. §46, contemplates payment of a reasonable counsel fee, limited by the necessities appearing from the evidence, such as will as nearly as possible promote the administration of fair and impartial justice by placing the parties on a par in defending their rights.

Plaintiff's counsel in this case represented her for over four years. Besides the divorce hearing which lasted four days, he attended seven additional hearings. He prepared numerous petitions, briefs and pleadings. It is unnecessary to expound on the many services he performed for the plaintiff, because the appellant does not contest the value of the services.

The defendant's contention is that the award of $3,000 is excessive in view of the fact that the court below erroneously determined the earnings of the defendant from his illegal business. While the court may not anticipate future violations in imposing prospectively an order for alimony, it may consider the income already received from illegal sources in fixing counsel fees. The defendant has recently purchased two automobiles, both titled in his girl friend's name. We are satisfied that the counsel fees can be paid from defend-

ant's cash, which seems to have a way of appearing when needed.

The order of alimony is amended to provide for the payment of $500 per month instead of $750 per month, and, as amended, it is affirmed. The order directing the payment of counsel fees is affirmed.