471 So.2d 612 (1985)
Ronald A. SEITZ, Appellant,
v.
Arlene SEITZ, Appellee.
Nos. 84-1447, 84-2740, 84-2741.
District Court of Appeal of Florida, Third District.
June 18, 1985.
Rehearing Denied July 10, 1985.
Barranco, Kellough & Kircher; Daniels & Hicks and Sam Daniels and Patrice A. Talisman, Miami, for appellant.
Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik and Paul A. Louis, and John Zavertnik, Miami, for appellee.
*613 Before BARKDULL, NESBITT and JORGENSON, JJ.
PER CURIAM.
The husband appeals the final judgment of dissolution of marriage which made various awards of alimony and support to the wife, and in addition, he appeals the award of attorney's fees. We affirm the final judgment of dissolution and the awards made therein but reverse the award of attorney's fees.
After three days of testimony, the trial court made the following findings of fact which are supported by the record. The parties were married in New York in 1964 and moved to Miami in 1972. Arl-Ron Corporation was formed by the parties to buy and operate a dry cleaning business. The wife's participation in the early years of the business was substantial. The stock in the corporation is wholly owned by the husband and has a value of $753,510. In 1983, the husband received a salary of $83,200 per year as well as $25,298 in corporate perquisites. In addition, the husband established an employer-funded corporate defined benefit plan. The trial court averaged the yearly payments to this plan and treated this amount ($27,514) as part of the husband's annual economic income. The court also included in its determination of the husband's annual economic income $60,000 which testimony indicated he receives from an "undisclosed source."
The parties own two homes by the entireties. The "Glenn Eagle" home, valued at $240,000, has an outstanding mortgage of $154,000. The "Mahogany" home, valued at $136,000, has an outstanding mortgage of $44,000. The husband has $82,544 in the pension fund and $18,000 in an IRA; the wife has $7,226 in the pension fund and $3,000 in an IRA. The husband also holds a note from the corporation for $47,500 and owns stock valued at $6,000. Two children were born of the marriage, one of whom is a minor.
In the final judgment of dissolution, the trial court dissolved the marriage and, inter alia, required the husband to pay: (1) $421,764 in lump sum alimony as equitable distribution[1] (which can be paid by quarterly installments of $11,716, with the wife acquiring a security interest in fifty per cent of the Arl-Ron stock and the assets of the corporation to secure the lump sum award); (2) $4,500 a month in permanent periodic alimony; (3) $1,600 a month in child support; (4) all the minor child's medical expenses; (5) the premiums necessary to maintain his present life insurance with the minor child designated as beneficiary until she reaches majority; (6) all reasonable and necessary bills incurred by the wife which were outstanding prior to the final judgment; and (7) the expenses of the wife's current dental treatment. Pursuant to an agreement between the parties, the court ordered the husband to deed his one-half interest in the "Mahogany" home to the wife and the wife to deed her one-half interest in the "Glenn Eagle" home to the husband.[2]
While the final judgment was on appeal before this court, the trial court entered an order, pursuant to a retention of jurisdiction in the final judgment, which awarded the wife $100,000 in attorney's fees. The husband has appealed this order as well as the final judgment. The matters have been consolidated before this court.
The only points raised by the husband relating to the final judgment which merit discussion are those concerning his ability to pay the awards made in the judgment.[3] *614 Initially, the husband contends that the trial court improperly took into account $60,000 a year that the husband receives from an "undisclosed source" in determining his annual economic income. He argues that this finding was based upon the wife's testimony that he was "skimming" this money from the business. The husband concludes, therefore, that the trial court's judgment must be reversed because it requires him to continue an illegal activity to fund the alimony award.[4]See King v. King, 79 Neb. 852, 113 N.W. 538 (1907) (in awarding alimony, court will not speculate upon or consider future income from a continuous career of criminality); Moore v. Moore, 198 Pa.Super. 349, 181 A.2d 714 (1962) (a support order may not be based upon the assumption that continuous unlawful pursuits will provide the anticipated income). Although we agree wholeheartedly with these cases cited by the husband and the reasoning therein, we find they are inapplicable to the present case.
It is well settled in Florida that income can be imputed to a spouse although the source of that income cannot be clearly established.
Where the head of a family by supplying money over a period of years, establishes and maintains a standard of living on a certain financial level, it may be inferred, in the absence of a sufficient showing to the contrary, that he has a source of income or financial status sufficient to enable him to continue to maintain his spouse in substantially the same manner of living.
Klein v. Klein, 122 So.2d 205, 207 (Fla. 3d DCA 1960). See also Garfield v. Garfield, 58 So.2d 166 (Fla. 1952); McRae v. McRae, 52 So.2d 908 (Fla. 1951); Anderson v. Anderson, 451 So.2d 1030 (Fla. 3d DCA 1984); Bucci v. Bucci, 350 So.2d 786 (Fla. 3d DCA 1977); Preston v. Preston, 216 So.2d 31 (Fla. 3d DCA 1968), cert. denied, 222 So.2d 753 (Fla. 1969); Farbman v. Farbman, 208 So.2d 648 (Fla. 3d DCA 1968). An accountant who reviewed the husband's financial affidavit and amended financial affidavit testified that based upon the husband's representations of expenses over a period of several years, the husband had an undisclosed source of income in the approximate amount of $60,000 per year. This testimony was corroborated by testimony from the wife and the wife's brother as to the husband's continual access over several years to ready cash in large amounts.
The trial court did not find, as the husband contends, that the income was derived from illegal activity, but rather merely found it came from an "undisclosed source."[5] Where, as here, the record demonstrates that "a husband has set a standard of living different from his ledger sheets and has maintained that standard over some period of time, the court is justified in holding that he has funds which are not visible." Bucci, 350 So.2d at 789. See generally Estreicher & Kornreich, Imputing Income: Proving the Unprovable, Fla. B.J., April 1985, at 56. Accordingly, it was not reversible error for the trial court to include the $60,000 from an undisclosed source in its determination of the husband's annual economic income.
The husband next argues that the awards in the final judgment are facially excessive and beyond his ability to pay and, *615 therefore, amount to an abuse of discretion by the trial court. He principally relies on a comparison between the amounts he must pay in the first year pursuant to the judgment and his alleged annual income. We find, however, that the husband's analysis is defective.[6]
The supreme court has held that in reaching a determination of "ability to pay," consideration should not be limited to the husband's income alone. Among other things, consideration should be given to the husband's capital assets. Sisson v. Sisson, 336 So.2d 1129 (Fla. 1976); Firestone v. Firestone, 263 So.2d 223 (Fla. 1972). In the present case, the trial court's finding that the husband has the ability to pay the awards in the final judgment is supported not only by the husband's annual economic income, but also by his substantial net worth.[7] Accordingly, the trial court did not abuse its discretion or otherwise commit error in determining that the husband had the ability to pay the awards in the final judgment. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Anderson. See Sisson; Firestone. See also McRae; Preston.
We turn now to the order awarding the wife attorney's fees in the amount of $100,000. The purpose of section 61.16, Florida Statutes (1983), which allows an award of attorney's fees, is to assure that each party has a similar ability to secure competent counsel. The award, therefore, depends not upon who "wins," but rather upon the relative financial circumstances of the parties. The trial court's fifty-fifty distribution of the assets in the present case places the parties in equal financial positions and, therefore, the award of attorney's fees to the wife was error. Arsht v. Arsht, 467 So.2d 421 (Fla. 3d DCA 1985); Cortina v. Cortina, 461 So.2d 964 (Fla. 3d DCA 1984); Poppe v. Poppe, 412 So.2d 38 (Fla. 3d DCA 1982); Golden v. Golden, 410 So.2d 945 (Fla. 3d DCA), review denied, 419 So.2d 1197 (Fla. 1982); Bullard v. Bullard, 380 So.2d 1090 (Fla. 3d DCA 1980); Bucci.
Accordingly, the final judgment of dissolution is affirmed but the order awarding attorney's fees to the wife is reversed.
NOTES
[1] The amount of the lump sum alimony award was derived from the trial court's finding that the wife was entitled to fifty per cent of the parties' assets accumulated during the marriage. The husband does not contest the trial court's finding that a fifty-fifty division was equitable nor the court's valuation of the wife's share at $421,761. He only complains that the total of the awards is excessive because of his lack of ability to pay.
[2] This exchange of interests in the two homes was taken into consideration by the trial court when awarding the lump sum alimony. See supra note 1.
[3] We find the husband's points concerning alleged errors of law in the awarding of lump sum alimony rather than a special equity and permanent periodic alimony rather than rehabilitative alimony to be without merit and not supported by the record.
[4] The husband, at the same time, denies that he has ever "skimmed" any money from the business.
[5] It is noteworthy that the wife testified that the husband received an annual undisclosed income of $52,000 to $78,000. The trial court, however, obviously relied on the accountant's testimony indicating that the amount was $60,000, which testimony was based on the husband's own representations as to his expenses over the past several years. The husband testified and maintains that he has no illegal source of income. Resolving all conflicts in the evidence so as to uphold the judgment, as we must, it appears the trial court accepted the husband's testimony that he was not "skimming" any money from the business, but also accepted the accountant's testimony that the husband had a source of income not reflected in the records before the court.
[6] The husband's argument in large part relies upon the assumption that the trial court improperly imputed $60,000 of undisclosed annual income to him. Although his argument may have had more strength if we had agreed with that assumption, the result here would have been the same.
[7] The trial court determined that the husband's net worth was $982,854 prior to judgment, while the wife's net worth was only $112,926.