608 So.2d 838 (1992)
Thomas R. UGARTE, et al., Appellants,
v.
Sharon UGARTE, Appellee.
Nos. 91-401, 91-811, and 91-1847.
District Court of Appeal of Florida, Third District.
September 22, 1992.
Rehearing Denied December 22, 1992.
*839 Stanley Jay Bartel, Miami, for appellants.
William A. Daniel, Jr., Mark A. Gatica, Hertzberg & Malinski, Miami, and Deborah Marks, North Miami, for appellee.
Before NESBITT, FERGUSON and COPE, JJ.
PER CURIAM.
In these consolidated cases, the former husband appeals the final judgment of dissolution of marriage which made various awards of alimony and support to the wife, the court's award of attorney's fees and costs, and two orders finding him in civil contempt for nonpayment of support obligations. We relinquished jurisdiction to the lower court to conduct a hearing for the purpose of setting forth the amount of income it was imputing to the former husband and the source of that income. Seilkop v. Seilkop, 575 So.2d 269 (Fla. 3d DCA 1991); Hogle v. Hogle, 535 So.2d 704 (Fla. 5th DCA 1988). Finding that the trial court has complied with this order, and having reviewed the evidence and the trial court's determinations, we affirm the final judgment of dissolution and the awards made therein and the awards for fees and costs. We do, however, reverse the orders for incarceration for civil contempt.
This former husband's chief claim of error is that the trial court erred in the amount of alimony and child support it ordered. He claims he is not appealing the asset distribution, which in fact awarded him his professional association, sole ownership of several properties, and $112,400 in his pension fund, but he is appealing only the $6,500 in monthly support awarded to his wife and three children.
The recent case of Hamlet v. Hamlet, 583 So.2d 654 (Fla. 1991) clearly establishes that the type of piecemeal review requested is prohibited. Upon review, it is our obligation to consider the overall scheme of distribution devised by the trial court, to achieve equity between the parties. Id. at 656. Here, the former wife was awarded the marital home, $25,000 from the husband's pension fund, and alimony of $1,500 per month. The trial court also ordered the former husband to pay child support in the amount of $1,000 per child per month, plus private schooling and the children's insurance expenses. It is obvious that the criteria set out in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), and repeated in Hamlet, 583 So.2d at 656, for the distribution of assets and the award of permanent periodic alimony, including review of the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates, were all carefully considered in the trial court's award. The court found that the wife had not worked outside the home during this twenty-year marriage and that the couple had enjoyed a lavish life-style during the marriage.
It is also clear that the income-generating properties acquired during the marriage were allocated to the husband, and it was within the trial court's discretion to *840 consider that fact in making its award of permanent periodic alimony. Hamlet, 583 So.2d at 656 citing Patterson v. Patterson, 315 So.2d 104 (Fla. 4th DCA 1975), cert. denied, 330 So.2d 20 (Fla. 1976).
The husband claims he simply does not have the income to meet the support obligations ordered. The trial court rejected this contention and concluded that it was easily within the husband's ability to meet the ordered payments. In Seitz v. Seitz, 471 So.2d 612 (Fla. 3d DCA 1985), we observed:
Where the head of a family by supplying money over a period of years, establishes and maintains a standard of living on a certain financial level, it may be inferred, in the absence of a sufficient showing to the contrary, that he has a source of income or financial status sufficient to enable him to continue to maintain his spouse in substantially the same manner of living.
Id. at 614, citing Klein v. Klein, 122 So.2d 205, 207 (Fla. 3d DCA 1960).
The trial court in the instant case found income available to the former husband in excess of $150,000 per year from his professional association, and there was sufficient evidence in the record to support this determination. Florida case law has long recognized that self-employed spouses, in contrast to salaried employees, have the ability to control and regulate their income. Their testimony, tax returns, and business records accordingly may not reflect their true earnings, earning capability, and net worth. See Jane L. Estreicher & Gerald I. Kornreich, Imputing Income: Proving the Unprovable, Fla.B.J. April 1985, at 56; see also Garfield v. Garfield, 58 So.2d 166 (Fla. 1952); McRae v. McRae, 52 So.2d 908 (Fla. 1951); Anderson v. Anderson, 451 So.2d 1030 (Fla. 3d DCA 1984); Bucci v. Bucci, 350 So.2d 786 (Fla. 3d DCA 1977); Preston v. Preston, 216 So.2d 31 (Fla. 3d DCA 1968), cert. denied, 222 So.2d 753 (Fla. 1969); Farbman v. Farbman, 208 So.2d 648 (Fla. 3d DCA 1968).
In the instant case, the gross income of the professional association of this self-employed optometrist was $468,000 in 1984, $489,000 in 1985, $504,000 in 1986, $584,000 in 1987 (the dissolution case was filed in 1987), $474,000 in 1988, $481,000 in 1989 and $447,000 in 1990. There was evidence that prior to filing for dissolution, the former husband was drawing around $40,000 a month from the professional association, but was giving the wife between $15,000 and $17,000 in cash per month to deposit in the family checking account to pay for the family's personal expenses. While there was some evidence that certain physical disabilities prohibited the former husband from achieving past earnings levels, there was also ample evidence of the prior stream of income and evidence that immediately preceding and subsequent to the filing for dissolution, assets had been shifted, resulting in a significantly lower recorded income for the husband's professional association. Also, evidence was submitted that large salaries were being paid to several of the former husband's relatives employed at the professional association, where payment at the going rate could have resulted in a substantial increase in the former husband's income level.
The trial court found that the professional association had provided income which until the dissolution had permitted the accumulation of "race horses, condominiums, pension plans, an expensive residence, an office building and numerous other assets." Additionally, after the hearing held on the imputed income, the court's amended judgment noted:
The court was also impressed with the testimony of the Former-Husband that he was being stripped to $500 month total income net for his own living expenses. And yet there was testimony that he was paying cash in 50 and 100 bill denominations for himself and companions on travel trips to the Caribbean and South America for air, hotel, food, etc. Even assuming subsequent reimbursement as business expenses from the P.A. or from Seminars or Hospitals for the Husband, there is no explanation for the costs of the companion or the source of pre-reimbursement cash.
*841 Reviewing the extensive evidence presented as to the overall scheme of remedies employed by the trial court, Hamlet, 583 So.2d at 654; Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), we find no abuse of discretion in the distribution of assets and the amounts of child support and alimony ordered. See Pastore v. Pastore, 497 So.2d 635, 637 (Fla. 1986); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
Also, we conclude that the trial court properly assessed attorney's fees and costs against the former husband. Prior to the instant consolidated appeal, the husband filed five appeals all of which were affirmed and resulted in the award of fees against him. The instant appeal follows four orders requiring the former husband to provide support, alimony, or other financial assistance to his former wife. The former husband conveyed assets in direct contravention of court orders. He was held in contempt on a number of occasions, both prior and subsequent to the entry of the trial court's final judgment for dissolution.
A party's financial status should not isolate him from the consequences of his conduct within the judicial system. A fee order based upon additional work made necessary by the appellant's litigious conduct is permissible. The instant award serves to avoid an inequitable diminution of the former wife's share of the parties' assets. See Mettler v. Mettler, 569 So.2d 496 (Fla. 4th DCA 1990); see also Sutter v. Sutter, 578 So.2d 788 (Fla. 4th DCA 1991); Steinfeld v. Steinfeld, 565 So.2d 366 (Fla. 4th DCA 1990). Furthermore, considering the distribution of assets and the earning abilities of the parties, the former husband clearly has the superior financial ability to pay the fees and costs. See Martinez-Cid v. Martinez-Cid, 559 So.2d 1177 (Fla. 3d DCA 1990); Kuse v. Kuse, 533 So.2d 828 (Fla. 3d DCA 1988); Blackburn v. Blackburn, 513 So.2d 1360 (Fla. 2d DCA 1987); see also Nisbeth v. Nisbeth, 568 So.2d 461 (Fla. 3d DCA 1990); Hanks v. Hanks, 553 So.2d 340 (Fla. 4th DCA 1989).
We do, however, conclude that the two orders finding the former husband in civil contempt for nonpayment of the support obligation and ordering incarceration must be reversed. In Perez v. Perez, 599 So.2d 682 (Fla. 3d DCA 1992), we observed that the purpose of a civil contempt proceeding is to obtain compliance on the part of a person subject to an order of the court. See Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla. 1985). Under Bowen, a civil contempt proceeding involves a two-stage inquiry: first, a determination of whether the respondent willfully violated the court's order; second, the decision as to what remedy is appropriate. Id. at 1278-79. Where incarceration is under consideration as a possible remedy for a civil contempt, there must be a separate affirmative finding that the contemnor possesses the present ability to comply with the purge conditions set forth in the contempt order. Id. at 1279.
In the present case, the trial judge in each of the two contempt orders being appealed, found that the former husband "had, and presently has the ability and means to pay all of the monies the Court ordered him to pay unless he has willfully divulged [sic] himself of the means of doing so." (Emphasis added). This statement, which appeared in each order, cannot be considered an affirmative finding of the present ability to comply. Absent such an unqualified finding, the court is limited to such non-incarceration options as payroll deductions and similar alternatives in its order for civil contempt. Perez, 599 So.2d at 683, Bowen, 471 So.2d at 1279; see Russell v. Russell, 559 So.2d 675, 677 (Fla. 3d DCA 1990), citing Knowles v. Knowles, 522 So.2d 477, 479 (Fla. 5th DCA), review denied, 531 So.2d 1354 (Fla. 1988). Thus, the orders for contempt must be reversed. If the former husband has in fact divested himself of the assets necessary to comply with the court's orders, the wife may seek alternative civil contempt remedies or move for criminal contempt.
In summary, the final judgment for dissolution is affirmed, as is the order awarding the former wife fees and costs. The two civil contempt orders are reversed.