GREEN, Judge.
This is an appeal from a final judgment entered in an interpleader action wherein the trial court found that appellant, Dr. Alvaro Vargas, had failed to meet his burden of proving that his deceased mother (Maria Vargas) had revoked a Totten Trust account in favor of her granddaughters, the appel-lees. We reverse.
In or about 1986, Maria Vargas established six Totten Trust accounts at the now defunct Miami Savings Bank.[1] Four of the accounts designated the appellees as beneficiaries while the remaining two designated the appellant as beneficiary. Subsequently, on May 18, 1988, Maria Vargas executed the following letter instructing the bank to transfer all of her accounts to appellant:
Dear Sirs:
I hereby authorize you to transfer absolute ownership of any and all accounts that I have in your institution to my son, Alvaro Vargas, M.D., bearer of this authorization. Said authorization includes any and all savings accounts, checking accounts, certificates of deposit including accumulated and earned interest as well as any other accounts not herein named. Such transfer of ownership is to be done without penalty. All previous instructions of trusteeship are hereby rescinded. Furthermore, my son is authorized to transfer, close or withdraw any and all sums in any and all my accounts and certificates of deposits as he alone may decide to do. This authorization is to apply immediately on presentation.
Truly yours,
/s/ Maria Pardo de Vargas”
On the following day, with this letter and the six passbooks in hand, appellant accompanied his mother to the bank to change the title to all accounts and passbooks in appellant’s name. The bank officer made the requested change to five of the accounts and passbooks but for some reason that was never adequately explained in the proceeding below,[2] failed to make the change on the account or passbook that is the subject of this litigation. The subject account and passbook remained in the name of Maria Vargas in trust for appellees until her death. After his visit to the bank with his mother, however, appellant maintained continuous possession of all six passbooks until his mother’s death in 1991.
The trial court found that both Maria Vargas and appellant left the bank knowing that neither title to the subject account or the face sheet to its passbook had been changed in any way. Based upon that fact and the fact that from that date forward until Maria Vargas’ death three years later, the subject account remained in Vargas’ name as trustee for appellees, the trial court concluded that appellant had not met his burden of showing that his mother had revoked the Totten ben *1166 eficiary designation during her lifetime. We disagree.
The subject account in the instant case is the classic Totten trust. It is typically characterized as follows:
“A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, suck as delivery of the passbook or notice to the beneficiary.” In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaf-firmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor, (emphasis added)
Seymour v. Seymour, 85 So.2d 726, 727 (Fla.1956) (quoting In re Totten, 179 N.Y. 112, 71 N.E. 748, 752 (1904)); see also section 655.81, Florida Statutes (1993). The simple issue before us is whether Maria Vargas’ letter instructing the bank to transfer all of her accounts to her son coupled with her act of giving all of her passbooks to her son were acts sufficient to revoke the subject trust in favor of her granddaughters during her lifetime. We find that they were.
There are no formalities for the revocation of a Totten Trust and indeed, any decisive act or declaration of disaffirmance during the lifetime of the owner will suffice. See, e.g., Terner v. Rand, 417 So.2d 303 (Fla. 3d DCA 1982) (delivery of a document to attorney expressly revoking Totten Trust sufficient even though document was not published in the owners lifetime); Ryder v. Sheldon, 69 A.D.2d 768, 415 N.Y.S.2d 35 (App.1979) (withdrawal of funds in trust sufficient to revoke even where owner had previously delivered passbooks to beneficiaries of trust); Klaw v. Kramer, 56 Misc.2d 173, 288 N.Y.S.2d 322, 323 (N.Y.Sup.Ct.1968) (assignment of passbook to Totten Trust to lender as security revoked trust to the extent necessary to secure note); In re Bearinger’s Estate, 336 Pa. 253, 9 A.2d 342 (1939) (revocation of trust by depositor’s letter directing beneficiary of Totten Trust to use funds to pay debts and funeral expenses). The relinquishment of the passbooks to appellant by his mother alone would have been a sufficient act of her declaration disaffirmance of the subject Totten Trust during her lifetime. See Seymour, 85 So.2d at 727. But certainly this act coupled with the May 18th letter leaves little room for doubt that Maria Vargas sought to revoke the trust in favor of appellees. Compare Serpa v. North Ridge Bank, 547 So.2d 199 (Fla. 4th DCA 1989) (where after Totten Trust established, owner executed a will providing in general terms for an alternative distribution of account and no other evidence or special circumstances regarding owner’s intent existed, will held insufficient indication of intent to revoke trust). The bank’s failure or neglect to effectuate the requested title change pursuant to its internal procedures cannot serve to limit the power of an owner to revoke a Totten Trust by any decisive act of disaffirmance. See Seymour, 85 So.2d at 727 (“[B]anking laws ... were designed primarily to regulate banks and are not necessarily conclusive of the ownership of deposited money.”); Terner, 417 So.2d at 303 (“The passbook agreement between the owner and the bank specifying the method for changing title to the accounts is solely for the protection of the bank and is not a limitation upon the owner’s power to revoke a Totten Trust by any decisive act of disaffirmance.”)
Thus, based upon the foregoing, we conclude that appellant’s unrefuted testimony at the hearing below was sufficient to demonstrate that his mother had in fact revoked the subject Totten Trust in favor of appellees during her lifetime and it was error for the court to hold to the contrary.
Reversed.

. The Miami Savings Bank failed and was taken over by the Resolution Trust Corporation ("R.T.C."). Republic National Bank later acquired the assets and liabilities of the Miami Savings Bank from the R.T.C. and was the party who initiated the interpleader action below.

. During the trial below, appellant testified that he and his mother were told by the bank officer that the bank needed to research the subject account but when found, its title would be changed in accordance with his mother’s letter.