676 So.2d 1022 (1996)
David P. PROVENCE, Appellant,
v.
PALM BEACH TAVERNS, INC., John Lind and Jayne C. Lind, Appellees.
No. 95-0544.
District Court of Appeal of Florida, Fourth District.
June 26, 1996.
*1023 Leon C. Baker, Boca Raton, for appellant.
Lauri Waldman Ross of Maland & Ross, Miami, and Bruce Benefeld, Sunrise, for appellees.
GUNTHER, Chief Judge.
Appellant, David P. Provence, plaintiff below (Provence), appeals a trial court order dismissing his amended complaint with prejudice. Because Provence alleged sufficient facts to confer standing, we reverse.
The appellees formerly owned and operated a tavern in West Palm Beach known as the "Dark Horse Tavern." In 1991, Provence purchased 100% of the shares of the corporation from Jacob Gilliken for $15,000 and various installment payments secured by the pledge of the stock. Thereafter, in January of 1992, appellee Jayne Lind purchased 50% of the shares from Provence either for herself or as a nominee for her son, appellee John Lind.
Nine months later, Gilliken sued to foreclose his lien on the pledged shares of stock due to non-payment. According to Provence, this suit was settled whereby the corporation agreed to pay all past due arrearages and Provence and John Lind agreed to become co-makers on the remaining obligation. According to the amended complaint, Provence entrusted the Linds to deliver the signed copies of the settlement agreement to Gilliken prior to the scheduled auction sale. However, *1024 this purported delivery never occurred and the Linds purchased the remaining shares at the public auction.
As a result of the above, Provence filed a shareholder's derivative action against the appellees claiming that, after obtaining 100% of the corporate stock, the Linds stripped the corporation of its cash and movable assets thereby leaving the same insolvent. Importantly, the amended complaint alleged that the Linds held 50% of the shares in a constructive trust for Provence due to their intentional non-delivery of the settlement papers and deceptive purchase of the outstanding stock at the auction sale. Eventually, the appellees moved to dismiss the complaint claiming that Provence lacked standing to bring a derivative action. Following a hearing, the trial court granted the motion and dismissed Provence's amended complaint. In so doing, the trial court relied on and cited to section 607.07401, Fla.Stat. (1993).
It is well settled that a motion to dismiss is utilized to determine whether the complaint has alleged a cause of action upon which relief can be granted. Alexander Hamilton Corp. v. Leeson, 508 So.2d 513 (Fla. 4th DCA 1987). The trial court must look only to the four corners of the complaint and the allegations contained therein should be taken as true without regard to the pleader's ability to prove the same. Id.; Gamma Dev. Corp. v. Steinberg, 621 So.2d 718 (Fla. 4th DCA 1993). Generally, one has standing to sue when he or she has a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation. Gieger v. Sun First Nat'l Bank of Orlando, 427 So.2d 815 (Fla. 5th DCA 1983).
A derivative action is one in which a stockholder seeks to sustain in his own name a right of action existing in the corporation. James Talcott, Inc. v. McDowell, 148 So.2d 36, 37 (Fla. 3d DCA 1962). Accordingly, the corporation is the real party in interest with the stockholder being only a nominal plaintiff. Id. However, in order to avoid predatory strike suits, Florida has expressly enacted the "contemporaneous stock ownership rule" in relation to derivative suits. This rule provides:
(1) A person may not commence a proceeding in the right of a domestic or foreign corporation unless the person was a stockholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time.
...
(7) For purposes of this section, "shareholder" includes a beneficial owner whose shares are held in a voting trust or held by a nominee on his behalf.
§§ 607.07401(1), (7), Fla.Stat. (1993). Thus, the rationale behind the rule is to ensure that the plaintiff has a "legitimate stake in the corporation in order to adequately represent the corporation's interests in the derivative suit." South End Improvement Group, Inc. v. Mulliken, 602 So.2d 1327 (Fla. 4th DCA 1992).
Recently, this court considered the contemporaneous stock ownership rule and noted the equitable nature of derivative actions:
In recognition of the equitable nature of derivative action, courts interpreting derivative actions statutes similar to section 607.147 have liberally construed such provisions to grant standing in a variety of factual settings without requiring "record" ownership. The consistent rationale of these decisions is that the policies supporting the contemporaneous ownership rule are not advanced by denying standing to a proven owner of an equitable interest in shares.
Id. at 1330 (footnote omitted). Hence, it appears that Florida has aligned itself with the majority of jurisdictions which recognize that record ownership of shares is not necessary to bring a derivative action, and thus, holders of equitable or beneficial interests in shares have standing to sue. See Edgeworth v. First Nat'l Bank of Chicago, 677 F.Supp. 982 (S.D.Ind.1988); Pearce v. Superior Court of Kern County, 149 Cal.App.3d 1058, 197 Cal.Rptr. 238 (1987); 13 Fletcher Cyclopedia Corporations § 5975 (1995);.
Although, in the instant case, Provence did not possess any stock at the time *1025 of the alleged "pirating" of the corporation's assets, he claims standing through his "equitable ownership" of stock via a constructive trust. "A constructive trust is one raised by equity in respect to property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 422 (1927). Constructive trusts are akin to an express trust in that a bifurcation of title occurs; bare legal title to the property is held by the possessor of the property while the beneficial interest is held by the person entitled to the property. In re Shepard, 29 B.R. 928 (Bkrtcy.M.D.Fla.1983). However, unlike an express trust or a resulting trust, a constructive trust arises solely by operation of law. Palmland Villas I Condominium Ass'n, Inc. v. Taylor, 390 So.2d 123 (Fla. 4th DCA 1980). Thus, a constructive trust is a remedial device with dual objectives: to restore property to the rightful owner and to prevent unjust enrichment. Abreu v. Amaro, 534 So.2d 771 (Fla. 3d DCA 1988).
To impose a constructive trust, there must be (1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment. Id. at 772. The person seeking to impose a constructive trust must prove these elements by clear and convincing evidence. Id. However, similar to any equitable remedy, the enforcement of a constructive trust is tempered by equitable defenses, including laches and estoppel. See generally Steinhardt v. Steinhardt, 445 So.2d 352 (Fla. 3d DCA), rev. denied sub nom., 456 So.2d 1181 (Fla.1984); Mills v. Holcomb, 389 So.2d 223 (Fla. 5th DCA 1980), rev. denied, 399 So.2d 1143 (Fla.1981).
In the instant case, Provence sufficiently alleged the existence of a constructive trust in his amended complaint. Assuming the truth of the trust's existence, as we must do, Provence would be the beneficial and equitable owner by operation of law of 50% of the shares of the corporation. Therefore, accepting the allegations of the complaint as true, Provence would have standing to bring a derivative action. Such a determination does not universally and conclusively confer standing upon Provence. Circuitously, if Provence failed to prove the existence of the constructive trust by clear and convincing evidence or if Provence was subject to an equitable defense which precluded the enforcement of the trust, standing would be destroyed. However, these conclusions cannot be reached at the motion to dismiss stage and without factual evidence regarding the trust itself. Accordingly, the trial court erred in dismissing Provence's derivative suit for a lack of standing.
REVERSED AND REMANDED.
GLICKSTEIN, J., concurs.
KLEIN, J., dissents with opinion.
KLEIN, Judge, dissenting.
I cannot agree that Provence has standing to bring a derivative action before he establishes his ownership in the stock through an action to establish a constructive trust. Neither South End Improvement Group. Inc. v. Mulliken, 602 So.2d 1327 (Fla. 4th DCA 1992), nor any of the cases from other jurisdictions cited in Mulliken, support reversal.
Province's complaint seeks relief only on behalf of the corporation. It does not seek the establishment of a constructive trust. Until Provence establishes ownership of the stock through his constructive trust theory, Provence is not a shareholder under section 607.07401(1),(7), Florida Statute (1993). Accordingly, allowing him to proceed with a derivative action violates the statute.
I would affirm without prejudice to the plaintiff bringing an action to establish ownership in the stock, and if he is successful, thereafter filing a derivative action.