766 So.2d 379 (2000)
Stephanie Chavez SAPORTA, Appellant,
v.
Daniel SAPORTA, Appellee.
No. 3D99-2747.
District Court of Appeal of Florida, Third District.
August 2, 2000.
Rehearing Denied September 13, 2000.
*380 Stephanie G. Morrow; Cynthia L. Greene, Miami, for appellant.
Richard J. Preira and Jonathan Jonasz, Miami Beach, for appellee.
Before GODERICH, SHEVIN and SORONDO, JJ.
SHEVIN, Judge.
Stephanie Chavez Saporta appeals a final dissolution judgment asserting error in the trial court's failure to impose a constructive trust in the parties' residence and failure to impute income to her husband, Daniel Saporta, for child-support purposes. We reverse the judgment except for the dissolution of the marriage and remand for further proceedings.
Stephanie and Daniel Saporta met in 1993, while living in Texas. At that time, Stephanie had three daughters. Stephanie and Daniel decided to move to Florida and live together so that Daniel could pursue a business opportunity. Stephanie and Daniel visited Florida in July. By September, the couple had purchased a home and had moved here. There is no dispute that the home was purchased solely with cash proceeds from Stephanie's inheritance. However, the home was titled in Daniel Saporta's name. Almost three years after the purchase of the home, in April 1996, the parties married. One daughter was born of the marriage. Stephanie filed for dissolution after the parties separated in March 1998.
The only testimony at trial came from the parties. The wife testified that in 1992 she inherited $170,000 from her aunt. The wife traced the inheritance as the proceeds used to purchase the home.[1] The wife wrote checks from that account for the down payment, attorney's fees and purchase price of the home. The wife testified that the home was titled solely in Daniel's name because she was concerned that her former husband's creditors would move against her assets.
Daniel testified that he was unaware of any of Stephanie's concerns about creditors. Instead, Daniel testified that Stephanie insisted that the home be titled in his name because that was Stephanie's contribution to him. He testified that Stephanie wanted him "to be head of the *381 household and contribute by taking care of the family, by supporting her three girls." Based on this belief, Daniel asserted that he was entitled to retain the house, titled in his name.
This case presents an unusual factual scenario. The parties here are not disputing the treatment of property held as a tenancy by the entireties, see § 61.075(3)(a)5, Fla. Stat. (1999); Robertson v. Robertson, 593 So.2d 491 (Fla.1991), or property purchased during a marriage and titled in one spouse's name. See Genter v. Genter, 270 So.2d 388 (Fla. 3d DCA 1972). Rather, this case involves a dispute over property purchased by parties years before there was a marriage. See generally George L. Blum, Annotation, Property Rights Arising From Relationship of Couple Cohabiting Without Marriage, 69 A.L.R.5th 219, 239 (1999). The wife's position is that the circumstances surrounding the purchase entitle her to a constructive trust on the property. The wife is correct. In Smith v. Smith, 108 So.2d 761 (Fla. 1959), the court addressed a similar scenario: An unmarried couple purchased a house titled in the man's name with proceeds from insurance policy benefits received by the woman. The Smith court found that the only possible basis for granting the woman relief "would be on the theory of the existence of a constructive trust." Smith, 108 So.2d at 763.
The court's failure to grant the wife's request for a constructive trust must be reversed because it is based on the erroneous conclusion that the wife failed to prove her entitlement to same. The record contains clear and convincing evidence establishing the factors giving rise to a constructive trust. "To impose a constructive trust, there must be (1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment." Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022, 1025 (Fla. 4th DCA 1996)(citing Abreu v. Amaro, 534 So.2d 771 (Fla. 3d DCA 1988)). In this case, there is clear and convincing evidence of the first element: there was, at a minimum, an implied promise that the husband would provide support for the wife and her daughters and that the home would be the family home. The court's final judgment finds that the wife permitted the home to be titled in Daniel's name as "her way of proving that she was serious about his being head of the household and that she was committed to the marriage." The record evidence establishes an implied promise.
As for the second element, the wife transferred her only funds, which were titled in her name, relying on the promise that this would be the family home. The final judgment recites that "[w]hile there was no agreement to do so, the Wife testified that on 2 or 3[sic] occasions she asked him to put the home in her name but he would accuse her of not trusting him and title was never transferred." Even by the husband's own admission, the home was titled in his name so he would feel secure in his position as "head of the household." This evidence demonstrates the wife's reliance on the promise that the house would be the family home.
There can be no doubt that there was a confidential relationship here, as element three requires; and, lastly, failure to impose a constructive trust would result in a windfall to the husband amounting to unjust enrichment.
"A constructive trust is a remedy which equity applies in order to do justice.... The trust is `constructed' by equity to prevent an unjust enrichment of one person at the expense of another...." Wadlington v. Edwards, 92 So.2d 629, 631 (Fla.1957); see Zanakis v. Zanakis, 629 So.2d 181 (Fla. 4th DCA 1993).
[A] court of equity will raise a constructive trust and compel restoration where one, through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity *382 and good conscience he should not be permitted to hold.

Quinn v. Phipps, 93 Fla. 805, 814, 113 So. 419, 422 (Fla.1927)(Emphasis added). Even when a property has not been acquired by fraud, a constructive trust will be imposed if equity would be offended should the property be retained by the person holding it. See Provence, 676 So.2d at 1022. This is so because a constructive trust is a remedial device with the dual objectives of restoring property to its rightful owner and preventing unjust enrichment. See Abreu, 534 So.2d 771. The wife presents a classic case where the imposition of a constructive trust is necessary to do justice and "prevent the unjust enrichment of one person at the expense of the other." Geiser v. Geiser, 693 So.2d 59, 60 (Fla. 5th DCA), review denied, 699 So.2d 1373 (Fla.1997); see Genter.
On remand, the court is instructed to impose a constructive trust on the house in the wife's favor and award her same. This result is without prejudice to the husband asserting a claim for any special equity he may feel entitled to thereon. See Knecht v. Knecht, 629 So.2d 883 (Fla. 3d DCA 1993), review denied, 639 So.2d 978 (Fla. 1994).
We next address the wife's assertion that the trial court abused its discretion in not imputing income to the husband for child support guidelines calculation purposes. We agree. The evidence supports the wife's claim.
The record demonstrates that the husband's reported income is dwarfed by the household's lifestyle. The husband's testimony that his business has been doing poorly for years is belied by the family's lifestyle, and the former husband provided no credible reason for maintaining a business that operates at such alleged severe losses. Here, as in Ugarte v. Ugarte, 608 So.2d 838, 840 (Fla. 3d DCA 1992), where the head of the family has established and maintained a standard of living on a certain financial level the court can impute income or financial status sufficient to maintain that standard. See Smith v. Smith, 737 So.2d 641, 643 (Fla. 1st DCA 1999).
The basis for imputing income may be inferred from the circumstances of the case. See Smith, 737 So.2d at 643. "A claim that a payor spouse has arranged his financial affairs or employment situation so as to short change the payee spouse is a valid matter to be explored in determining the payor's real ability to pay." Id., at 644. Failure to impute income for child-support purposes impermissibly penalizes the child, whose needs the child support was designed to meet. Accordingly, we reverse the judgment as to the child-support award. On remand, the court shall reconsider whether to impute income in fashioning the child-support award, in accordance with this decision.
Based on the foregoing, we reverse the final judgment and remand for further proceedings.
NOTES
[1] We find no authority to support the trial court's conclusion that the wife gave Daniel full access to the inherited funds by virtue of placing $100,000 in a Certificate of Deposit titled "Stephanie Anne Chavez, in Trust for Daniel Saporta." This created the classic Totten Trust. See Vargas v. Vargas, 659 So.2d 1164, 1166 (Fla. 3d DCA 1995). "A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor." Vargas, 659 So.2d at 1166. "The depositor retains complete control over these funds during his lifetime; ownership vests in the donee only on the depositor-trustee's death." Cannuni v. Schweiker, 740 F.2d 260, 265 (3d Cir.1984)(citing Restatement 2d of Trusts § 58 (1959)). By virtue of this trust, Daniel Saporta had no access to these funds.