GROSS, J.
We reverse two aspects of the final judgment of dissolution — the portions on “Parental Responsibility” and “Child Support Obligations.”
The trial court struck the husband’s pleadings due to “his willful failure to comply with discovery obligation[s].” During the trial of parental responsibility issues, the court made rulings, evidentiary and otherwise, based on the fact that the husband’s pleadings had been stricken. Custody of a child is always determined upon the best interests of the child; “[s]uch issues are not to be foreclosed on technical pleading defaults.” Seibert v. Seibert, 436 So.2d 1104, 1105 (Fla. 4th DCA 1983); see also Childers v. Riley, 823 So.2d 246 (Fla. 4th DCA 2002); Webber v. Novelli, 756 So.2d 164 (Fla. 4th DCA 2000); Barnett v. Barnett, 718 So.2d 302, 304-05 (Fla. 2d DCA 1998). In a divorce case, the striking of pleadings is a sanction with no impact on child custody issues. If a party has refused to respond to proper discovery pertaining to child custody, the trial court may take such conduct into account in making a custody decision. The court may not rely on a procedural device, such as a default or the striking of pleadings, to limit evidence on child custody or *300 to summarily decide the issue. The guiding principle is always the best interest of the child. We remand for a new trial on the child custody issues.
As to child support, the husband testified that he did not have a job and that his money came from illicit activities. Until 2005, the husband had a window cleaning business where he earned $750 per week. Prior to the marriage, the husband had been convicted on a cocaine charge. The husband said that $400,000 stored in his mother-in-law’s attic was the couple’s primary source of funds during the marriage, but that the money was gone. The wife did not identify a legal source of the husband’s income. She said that the couple spent $4,500 a month on marital expenses from a joint checking account, in addition to other expenses— such as the mortgage, doctor visits, groceries, and vacations — paid in cash. She testified that the husband told her that he brought home about $10,000 a month and that if the couple were to divorce, the wife “would have to marry a doctor to continue the way [she had] been living.”
Based upon this testimony, “the lifestyle of the parties prior to the filing of the divorce, the fact that the Husband has no ‘traditional job’ and he has been paying substantial amounts of bills on a routine basis,” the circuit court found that the Husband had a net income of $80,000 per year or $6,666.66 per month, leading to a child support obligation of $1,924.00 per month.
 The problem with this finding is that there was nothing in the evidence to show that the husband had a legal source of funds to support such an income level. A court may not base a future award of support upon “a future income from a continuous and persistent career of vice and criminality, and adopt as a basis of its decree a division of the anticipated spoils of [iniquity].” King v. King, 79 Neb. 852, 113 N.W. 538, 539 (1907); see Seitz v. Seitz, 471 So.2d 612, 614 (Fla. 3d DCA 1985) (citing King with approval). “It is against public policy to base a court order of support upon the assumption that [the husband] will violate the law in order to acquire the necessary funds to pay it. To base an order on anticipated unlawful conduct, not only recognizes, but also encourages,” the future violation of the law. Moore v. Moore, 198 Pa.Super. 349, 181 A.2d 714, 715 (1962); see Seitz, 471 So.2d at 614 (citing Moore with approval); Sheridan v. Sheridan, 247 N.J.Super. 552, 589 A.2d 1067 (1990) (holding that court should not equitably distribute marital property acquired with illicitly obtained funds).
We reverse the child support award and remand for the trial judge to determine the husband’s actual earning capacity from legal pursuits. “A defendant who has been earning his income from illegal pursuits is presumed to have an earning capacity in legal pursuits which can be the basis for [a child support] order, even though there is no evidence that he ever engaged in lawful pursuits.” Moore, 198 Pa.Super. at 352, 181 A.2d 714. The only record evidence of a legitimate source of income was $750 a week from window washing.
We affirm all other portions of the final judgment.

Affirmed in part, reversed in part, and remanded.

WARNER and FARMER, JJ., concur.