DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JUAQUIN SILVAS, JR.,**
Appellant,

v.

**AMANDA MARIE SILVAS** and **GRACIELA SILVAS,**
Appellees.

No. 4D21-373

[February 16, 2022]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Laurie E. Buchanan, Judge; L.T. Case No. 472018DR000433.

Lori I. Steger of Steger Law, Stuart, for appellant.

Glenn J. Sneider of Sneider Law, Okeechobee, for appellees.

KLINGENSMITH, J.

Juaquin Silvas, Jr., ("Former Husband") appeals the trial court's final judgment of dissolution of marriage with Amanda Marie Silvas ("Former Wife"). Although Former Husband raises several points on appeal, we affirm on all issues without comment except for one: whether the trial court abused its discretion by imposing a constructive trust on the marital home. On that question, we affirm in part and reverse in part.

Former Husband and Former Wife were married in 2007. In 2018, when Former Wife filed her Second Amended Petition for Dissolution of Marriage, she added Former Husband's mother as a party to the proceedings. The Second Amended Petition included counts for partition of real property, resulting trust, and constructive trust.

The trial court held two evidentiary hearings where it heard testimony from various witnesses. Former Wife testified that Former Husband bought the subject property—titled solely in his name—after their engagement but before the wedding. Former Husband's uncontradicted testimony was that he used nonmarital funds to purchase the property.

However, whether the newlyweds ever intended to establish this property as their marital home was sharply disputed.

Former Husband testified that he transferred the property to his father with no intention of creating a marital home. Instead, he planned to build a home on the land for his parents. He said that he transferred title to his father as a sign of good faith for helping with his general affairs and not as a way to secure funding for construction.

Former Wife told a different story, testifying that the couple did not have the ability to get a construction loan before their marriage, and Former Husband transferred the title to the property to his father four months before the nuptials to enable them to obtain the necessary loan to build the house.

The testimony at the hearings also significantly differed regarding the extent of each party's respective involvement during the construction process. Former Wife testified that construction commenced as the couple were on their honeymoon and was completed later that year. She claimed that she selected furnishings, made interior design choices, and was actively involved with the contractor, who was a friend, throughout the construction process until the home was finished. Former Husband testified that Former Wife was not involved in planning the house and that the contractor had no relation to either party whatsoever.

The contractor who built the home testified at the hearings and substantially corroborated Former Wife's testimony regarding the home's origins. Contrary to the Former Husband's testimony, the contractor testified she discounted the contracting fee as a wedding gift to Former Wife. The contractor also asserted that Former Husband's father was never involved in any decision-making when building the home and that she never discussed construction details with him. The contractor also confirmed that Former Wife made most of the decisions regarding construction details and design. Additionally, the contractor was never told the house was being constructed for Former Husband's parents, and she explained that the contracting fee would not have been discounted as a wedding gift if that were the case.

Despite Former Husband's claim that the home was built for his parents, the evidence was undisputed that from the end of construction in 2007 until the death of Former Husband's father in 2017, neither of his parents ever lived in the home. Instead, Former Husband and Former Wife resided in the home and made monthly payments that Former Wife described as mortgage payments. Former Husband countered these were

actually rent payments made pursuant to an oral lease with his parents since they owned the house. Former Husband admitted, however, that these payments were paid from marital funds directly to the lender and not to his parents. Further, the undisputed evidence at the hearings showed that throughout their marriage the couple claimed a mortgage interest deduction on their joint tax returns during their occupancy of the home.

The trial court found Former Wife's account of how the marital home was planned and constructed to be the more credible. The trial court found that the couple obtained financing from a lender to build the home by transferring title to the father who acted as the "straw man" for the loan and executed all the loan documents. The trial court noted that additional evidence of this intent was revealed after the father died when it was discovered that the contents of the father's unprobated will, which Former Husband helped arrange, devised everything to Former Husband's mother with the sole exception of the subject property which was bequeathed to Former Husband.

The trial court deemed the Former Husband's testimony not credible regarding the home's ownership and found by clear and convincing evidence that his father held bare legal title to the real property only to assist the couple in obtaining a mortgage. The trial court also found that the father never intended to keep an ownership interest in the property. As a result, the court imposed a constructive trust on the home as part of its written final order of dissolution. Based on the above findings, Former Wife was awarded a 50% interest in the property and a lis pendens placed on the property pending partition and sale. This appeal followed.

"To impose a constructive trust, there must be (1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment." *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1025 (Fla. 4th DCA 1996). Moreover, there must be "clear and convincing evidence" on the record establishing the factors needed to prove a constructive trust. *Saporta v. Saporta*, 766 So. 2d 379, 381 (Fla. 3d DCA 2000). A constructive trust can "prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem." *Wadlington v. Edwards*, 92 So. 2d 629, 632 (Fla. 1957). A court should impose a constructive trust where one party acquired property by fraud or "when it is 'against equity' that someone who acquired property without fraud should continue to retain possession." *Silva v. de la Noval*, 307 So. 3d 131, 134 (Fla. 3d DCA 2020).

Florida courts have imposed constructive trusts in divorce proceedings to create an equitable outcome. *See Zanakis v. Zanakis*, 629 So. 2d 181, 182 (Fla. 4th DCA 1993); *see also Saporta*, 766 So. 2d at 381. In *Saporta*, the Third District remanded and instructed the trial court to impose a constructive trust on the marital home because the imposition of the trust was "necessary to do justice and 'prevent the unjust enrichment of one person at the expense of another.'" *Id.* (quoting *Geiser v. Geiser*, 693 So. 2d 59, 60 (Fla. 5th DCA 1997)).

Here, the trial court did not abuse its discretion in imposing a constructive trust on the marital home. *See Saporta*, 766 So. 2d at 381. In its well-crafted final order, the trial court detailed the clear and convincing evidence that proved all four factors and the necessity of a constructive trust. *See Provence*, 676 So. 2d at 1025.

First, the testimony of both Former Husband and Former Wife showed the existence of the implied promise that the house was intended to be their marital home where they planned on raising their children during the marriage. *See Saporta*, 766 So. 2d at 381.

Second, while Former Wife did not contribute funds to buy the property, like in *Saporta*, clear and convincing evidence showed that Former Wife assisted with the design and construction of the home and made mortgage payments with Former Husband during the marriage. Additionally, the couple included the home on their marital tax returns. *See id.*

Third, a confidential relationship existed and was supported by the trial court's finding that the Former Husband and Former Wife were married with two children, lived in the house that they constructed together, and jointly paid mortgage payments. *See id.*

Fourth, the record supported the court's conclusion that failure to impose a constructive trust on the marital home would result in the unjust enrichment of Former Husband. *See id.*; *Geiser*, 693 So. 2d at 60.

Although we disagree with Former Husband that imposing the constructive trust was improper, we do agree that the trial court erred by failing to account for Former Husband's contribution of nonmarital funds towards the initial purchase of the property before the marriage. Because it was undisputed that Former Husband bought this property using his personal assets before the marriage, the trial court erred in awarding an equal split of the home's sale proceeds without taking into consideration

4

the value of the couple's respective nonmarital contributions to the property.

We therefore reverse that portion of the final judgment and remand to the trial court for further proceedings consistent with this opinion. We affirm on all other issues without comment.

*Affirmed in part, reversed in part, and remanded with instructions.*

DAMOORGIAN and CIKLIN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

5