801 So.2d 175 (2001)
Marianne FOX, et al., Appellants,
v.
PROFESSIONAL WRECKER OPERATORS OF FLORIDA, INC., Appellee.
No. 5D00-3332.
District Court of Appeal of Florida, Fifth District.
November 30, 2001.
*177 David George Hutchison, Key Largo, for Appellants.
Patrick M. Magill, Orlando, for Appellee.
SAWAYA, J.
Marianne Fox appeals the order dismissing ten counts of her fourteen count petition which attempts to allege that the directors of Professional Wrecker Operators of Florida, Inc. [PWOF] breached their fiduciary duty to both PWOF and to Fox. The trial court dismissed the counts of the petition with prejudice finding that (1) Fox did not have standing to bring the action on behalf of herself or any member of PWOF; (2) Fox failed to state a derivative cause of action against any of the directors individually; and (3) the petition failed to allege ultimate facts upon which Fox, individually, could state a cause of action against any of the named directors. We affirm.

Factual Background
PWOF is a not-for-profit corporation which was organized to promote the common interest of persons involved in the recovery, removal and storage of motor vehicles. Until her expulsion, Fox was a member of PWOF, served on the board of directors, and was running for president thereof. Fox became concerned about how the finances of PWOF were being handled, and her request to see the financial documents of PWOF led to her expulsion from membership in PWOF.
*178 Fox then filed her petition seeking an accounting, appointment of a receiver, and reinstatement to the board. A subsequent audit of the books of PWOF by an accounting firm revealed some sloppy accounting and office practices and criticized the lack of supporting documentation to back up travel and entertainment expenditures, political contributions, and cash disbursements. It also reported, among other things, that PWOF, while a not-forprofit corporation, was actually filing income tax returns as if it were a for-profit corporation and that PWOF had paid bonuses to the executive vice president which it had not reported to the IRS or included on the appropriate W-2 form. The report further revealed that one exhibitor at the annual PWOF-sponsored trade show had received a large discount for two years without proper documentation or stipulation in the written contracts; that approval of bonuses to PWOF employees for 1998 was not documented in the board minutes; and that PWOF was reimbursing employees at excessive rates for use of their cars.
Fox's petition alleges that responsibility for these accounting shortcomings lay directly with the board of directors of PWOF. Her petition contains five counts[1] alleging derivative claims against the individual directors on behalf of all members of PWOF and five counts which attempt to state a cause of action for her own direct claims against them.

Standard Of Review
The primary purpose of a motion to dismiss is to request the trial court to determine whether the complaint properly states a cause of action upon which relief can be granted and, if it does not, to enter an order of dismissal. Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022 (Fla. 4th DCA 1996). In making this determination, the trial court must confine its review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept as true all well-pleaded allegations. City of Gainesville v. State, Dept. of Transp., 778 So.2d 519 (Fla. 1st DCA 2001); Cintron v. Osmose Wood Preserving, Inc., 681 So.2d 859, 860-61 (Fla. 5th DCA 1996); Provence. It is not for the court to speculate whether the allegations are true or whether the pleader has the ability to prove them. City of Gainesville; Provence. Thus, "[t]he question for the trial court to decide is simply whether, assuming all the allegations in the complaint to be true, the plaintiff would be entitled to the relief requested." Cintron, 681 So.2d at 860-61. When an appellate court reviews an order determining the sufficiency of a complaint, the appellate court must apply the same principles as the trial court. City of Gainesville. Because the determination whether a complaint sufficiently states a cause of action resolves an issue of law, an order granting a motion to dismiss is reviewable on appeal by the de novo standard of review. Id.
When standing is raised as an issue, the court must determine whether the plaintiff "has a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation." Provence, 676 So.2d at 1024. The de novo standard of review also applies to review an order of dismissal based on lack of standing. Putnam County Envtl. Council, Inc. v. Board of County Comm'rs of Putnam County, 757 So.2d 590, 594 (Fla. 5th DCA 2000) ("[W]e note that the standard of review for the dismissal of a complaint for failure to allege facts establishing the plaintiff's standing is de novo review."). Thus we proceed to review the issues presented to us in these proceedings pursuant to this standard.

*179 Derivative Cause Of Action On Behalf Of A Member Of A Not-For-Profit Corporation.
A derivative action is generally defined as a cause of action on behalf of a stockholder to enforce a right of action that exists on behalf of the corporation. Fort Pierce Corp. v. Ivey, 671 So.2d 206 (Fla. 4th DCA 1996). It seeks redress for an injury suffered by the corporation or the stockholders generally. Id. A direct action, on the other hand, is a cause of action on behalf of a stockholder to enforce a right of action that exists on behalf of the stockholder individually. Id. It seeks redress for an injury suffered directly by the stockholder which is separate from any injury sustained by the other stockholders. Id. Thus the injury is the determining factor in deciding whether a claim is direct or derivative; if the injury is to the corporation, and only indirectly harms the shareholder, the claim must be pursued as a derivative claim.
Fox asserts that she had standing to bring both the derivative claims, Counts III, V, VII, IX, and XI, which attempted to state causes of action against the individual directors on behalf of all members of PWOF, and her direct claims, Counts IV, VI, VIII, X, and XII. Fox states that she was a member of PWOF until she was wrongfully expelled from membership and has a right to bring suit in her own name and on behalf of all of the members of PWOF.
A 1993 amendment to Chapter 617, Florida Statutes, cast a pall over the right of a member of a not-for-profit corporation to bring a derivative action. Chapter 617, which applies to not-for-profit corporations, does not contain provisions that specifically allow derivative actions. But prior to the 1993 amendment, derivative actions were permitted pursuant to section 617.1908, Florida Statutes (1991), which made the provisions of chapter 607, the Florida Business Corporation Act, applicable to not-for-profit corporations. Chapter 607 does make provision for derivative actions. In 1993, section 617.1908 was amended to provide in pertinent part that "the provisions of chapter 607, the Florida Business Corporation Act, shall not apply to any corporations not for profit." Thus the apparent effect of the 1993 amendment was to eliminate the applicability of the chapter 607 derivative action provisions to not-for-profit corporations.
Admittedly, with the exception of Larsen v. Island Developers, Ltd., 769 So.2d 1071 (Fla. 3d DCA 2000), rev. denied, 789 So.2d 346 (Fla.2001), little case law exists in Florida which addresses the right of a member of a not-for-profit corporation to bring a derivative action after the 1993 amendment. Within the orbit of current Florida law regarding this subject, the apogee is Larsen and, because the case before us is factually similar to Larsen, we begin our analysis with that decision. Fox, citing Larsen, asserts that to prevent her from bringing a derivative action because PWOF is a not-for-profit corporation would create an unconstitutional restriction on her right to access to the courts.[2] *180 Larsen held that derivative actions against not-for-profit corporations were recognized by the common law and that the 1993 legislative amendment to chapter 617 should not be applied to leave members of not-for-profit corporations without a remedy.
We find the reasoning of Larsen persuasive. Because there is nothing about the remedy, which seeks redress for breach of fiduciary duty, that warrants distinctive treatment based upon corporate purpose, we see no reason to treat members of not-for-profit corporations differently from members of for-profit corporations. Moreover, because of legislative neglect or inattention, it makes little sense to us to place members of a not-for-profit corporation who believe its affairs to be mismanaged by its directors in the predicament of having to persuade the corporation's directors to take action on its behalf when they may be disinclined to do so, especially if they are the cause of the mismanagement. Thus, refusal of the directors to act may, in many instances, leave legitimate grievances unanswered and the members without a remedy.
Although legal literature exists which indicates a "historical reluctance" by courts to interfere in the internal operations of nonprofit corporations,[3] certainly courts in other jurisdictions have allowed derivative suits by a member of a nonprofit corporation. See e.g., Beard v. Achenbach Mem'l Hosp. Ass'n, 170 F.2d 859 (10th Cir.1948); Goodman v. Perpetual Bldg. Ass'n, 320 F.Supp. 20 (D.D.C.1970); Kirtley v. McClelland, 562 N.E.2d 27 (Ind. Ct.App.1990) (cited in Larsen); Valle v. North Jersey Auto. Club, 141 N.J.Super. 568, 359 A.2d 504 (App.Div.1976), aff'd as modified, 74 N.J. 109, 376 A.2d 1192 (1977). Because at common law the directors of a private corporation are considered by equity to be in a fiduciary relationship with the corporation and its shareholders, 3 Fletcher, Cyclopedia of Corporations, § 838 at 142 (1975 rev.), and because the right to assert a claim for the tort of breach of fiduciary duty derives from the common law, see, e.g., Batas v. Prudential Ins. Co. of America, 281 A.D.2d 260, 724 N.Y.S.2d 3 (2001); Viruet v. Rubin, 181 Misc.2d 535, 695 N.Y.S.2d 487 (Sup.1999); Bohatch v. Butler & Binion, 905 S.W.2d 597 (Tex.App.1995), aff'd, 977 S.W.2d 543 (Tex.1998), we agree with the conclusion reached in Larsen that the purpose for which a corporation is formed (profit versus nonprofit) is immaterial. Therefore, we hold that the members of either type of corporation should be treated equally and be allowed to bring a derivative action against the directors for perceived breaches of fiduciary duty. We are not dissuaded from this conclusion by the arguments of PWOF that urge adoption of a rule preventing derivative actions based on reasoning that we find uninformed by either principle or policy.
Having concluded that Fox had standing to bring the derivative actions, we must next determine whether Fox's complaint states a cause of action either derivatively or in her own right which would subject the directors to suit.

Whether The Complaint Fails To State A Cause Of Action Against The Appellees As Directors of The Corporation
Section 617.0830 sets forth the standards of performance required of directors *181 of not-for-profit corporations. Fox argues that directors who meet these standards enjoy immunity from civil liability pursuant to section 617.0834. Fox specifically cites section 617.0834(1) in support of her argument that Counts III, V, VII, IX, and XI of her complaint properly allege a derivative action for breach of fiduciary duty against each director individually.
PWOF asserts that in the absence of any allegations by Fox that PWOF comes within the ambit of section 617.0834, which specifies that it only applies to corporations recognized under sections 501(c)(3), (c)(4), and (c)(6) of the Internal Revenue Code and agricultural or horticultural organizations recognized under (c)(5) of the Internal Revenue Code, section 617.0831 applies. Section 617.0831 makes section 607.0831 of the general corporations chapter applicable to nonprofit corporations. Section 607.0831, which is analogous to section 617.0834, essentially provides that directors are immune from liability in their individual capacity, absent fraud, criminal activity or self-dealing/unjust enrichment. We conclude that PWOF is correct regarding which statute applies, although the outcome of this case does not turn on any difference between the two.
When the allegations of Fox's complaint are compared to the provisions of section 607.0831 in light of the standard of review we have enunciated, we find that Fox failed to allege sufficient facts to state causes of action against the directors individually. Basically, Fox merely asserts that the named directors allowed the financial mismanagement to occur and to continue after she complained about it. The allegations of failure to investigate and mismanagement of finances are no more than simple negligence claims, for which the directors are immune. Perlow v. Goldberg, 700 So.2d 148 (Fla. 3d DCA 1997) (holding that there are valid public policy reasons for not permitting a piercing of the corporate veil to reach the individual directors of nonprofit corporations in the absence of crime, fraud, self-dealing or unjust enrichment of the directors). Thus, the trial court correctly dismissed Counts III, V, VII, IX, and XI of Fox's complaint.

Whether Separate, Individual Causes Of Action Have Been Properly Alleged
In Counts IV, VI, VIII, X, XII, Fox attempts to state causes of action on her own behalf against the individual directors for asserted breaches of fiduciary duty. However, our review of the complaint pursuant to the standard of review we have set out in this opinion reveals that Fox is actually attempting to state a cause of action for defamation, libel, and/or slander, not breach of fiduciary duty. Her counts for wrongful expulsion and election irregularities (Counts I, II, and XIV) were not dismissed and would adequately address the claims she has against PWOF. Insofar as Fox wants damages for harm to her personal and business reputations for allegedly untrue statements made by the directors, Fox should have couched her claims as seeking redress for defamation, libel, and/or slander. She does not state causes of action for breach of fiduciary duty which would take her claims outside simple negligence for which the directors enjoy immunity from personal liability.

Conclusion
We conclude that the trial court correctly dismissed Counts III through XII for failure to state a cause of action. While the trial court incorrectly decided that Fox lacked standing to bring a derivative action against the directors, it was correct in concluding that, in any event, Fox's counts did not and could not state derivative *182 causes of action against the directors. As for Fox's attempts to state direct causes of action against the directors in her own right, her assertions were inadequate and thus properly dismissed. Count I for reinstatement of Fox as a member, Count II seeking to set aside the 1999 election, and Count XIV for unlawful termination of Fox's membership are not subject to the dismissal order and adequately address Fox's individual claims. Thus, the order of dismissal is affirmed.
AFFIRMED.
THOMPSON, C.J. and SHARP, W., J., concur.
NOTES
[1] A sixth count, Count XIII, appears to have been abandoned.
[2] The court in Larsen found support for this reasoning in the decision of Kluger v. White, 281 So.2d 1, 4 (Fla.1973) wherein the court held that:

[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. s 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
[3] See Robin Dimieri and Stephen Weiner, The Public Interest and Governing Boards of Nonprofit Health Care Institutions, 34 Vand. L.Rev. 1029, 1066 n. 154 (May 1981).