NATIONWIDE MUTUAL INSURANCE
CO. Plaintiff,

v.

NATIONAL CATASTROPHE
ADJUSTERS, et al.,
Defendants.

No. 99CV1022.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 8, 2002.

James Joseph Brundny, Jr., Reminger & Reminger Co., L.P.A., Columbus, OH, Dennis Hearon, George Curran, John Hopkins, Southfield, MI, Phillip Yeager, Hopkins Curran & Smith PLLC, Ada, MI, for Plaintiff.

Richard A. Williams, Williams & Petro Co. LLC, Columbus, OH, Richard Osborn Wuerth, Lane Alton & Horst, Columbus, OH, for Defendants.

### OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Motion for Partial Summary Judgment filed by Defendant National Catastrophe Adjusters ("NCA") on September 12, 2001, and the Motion to Dismiss filed by Defendants McLarens Toplis of North America, Inc. ("McLarens") and Larry Wood ("Wood") on September 14, 2001. The Defendants seek summary judgment and dismissal on the Plaintiff's claims of (1) negligence; (2) breach of fiduciary duties; and (3) negligent supervision. Jurisdiction is proper pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. For the following reasons, the Defendants' Motions are **GRANTED** in part and **DENIED** in part.

### II. FACTS

In June 1997, Defendant NCA contracted with the Plaintiff, Nationwide Mutual Insurance Company ("Nationwide"), to provide claims adjusting services. The contract specified that NCA acted as an independent contractor in this regard, stating, "[NCA] is an independent contractor for all purposes. No provision of this Agreement is intended to create, nor shall be deemed or construed to create, any relationship between Nationwide and [NCA], other than that of independent contractors." Nationwide's Guidelines for Independent Adjusters, which were set out in an exhibit to the Contract between NCA and Nationwide, stated, in pertinent part:

1. *You have no settlement authority unless specifically directed otherwise by the Enterprise Claims Representative.*
2. Independent adjusters/appraisers must secure authorization from the company prior to making any commitments.
3. Do not comment on, or commit to coverage to any party unless specifically directed to do so by the assigning Enterprise Claims Representative. The company will retain the sole right to make any and all coverage determinations.

(Emphasis in original).

In October 1997, NCA entered into a contract with Defendant McLarens whereby each could request the other to provide adjusters and other services to each other's clients. In August 1998, Nationwide called upon NCA for its services to appraise the damage to Nationwide's insureds in the Virginia Beach, Virginia area that resulted from Hurricane Bonnie, which struck the Virginia Beach area on or about August 28, 1998. NCA subsequently called upon McLarens to provide general adjusters from the Virginia Beach area

to assist NCA in fulfilling its contract with Nationwide to appraise the claims resulting from Hurricane Bonnie.

One of Nationwide's insureds who had been hit by the hurricane was Professional Hospitality Resources, Inc. ("PHR"), which owned and operated six hotels and time-share facilities in the Virginia Beach area. McLarens assigned Defendant Larry Wood to process the claims of PHR. Nationwide alleges that Wood exceeded the scope of his authority by purporting to make coverage determinations and settle some of PHR's claims before ascertaining the nature and extent of PHR's coverage for its properties. Specifically, Nationwide contends that independent adjusters, including Wood, were to document the source of water intrusion into all of the buildings being examined for damage from Hurricane Bonnie because many of Nationwide's policies, including PHR's policies, imposed limitations on coverage for damages caused by wind-driven rain. Contrary to this obligation, Nationwide claims that Wood, immediately upon meeting with PHR representatives, agreed to replace all of the carpeting in PHR's hotels, without first determining the source of the water intrusion into the properties. Furthermore, Nationwide alleges that, within a few days of being assigned to handle PHR's claim, Wood agreed to refurbish completely four out of five hotels, and agreed that the hotels could remain closed until the refurbishment was finished, and that Nationwide would compensate timeshare holders for the loss of usage of their timeshare units while the refurbishment was taking place.

Nationwide contends, furthermore, that Wood failed to report his activities to Nationwide on a timely basis, and then attempted to cover-up his actions after realizing that he had exceeded his authority, thereby preventing Nationwide from correcting the problem or minimizing the harm done. As a result, Nationwide claims that it did not realize that there was a problem with the way Wood was handling PHR's claims until September 9 and 10, 1998, when its own personnel toured PHR's hotels and determined that a large portion of their damage had been caused by wind-driven rain. Thus, on September 11, 1998, Nationwide requested that Wood be removed from handling PHR's losses. Yet, on that same date, after being removed from the PHR assignment, Wood met with PHR representatives and signed a document entitled "Items Authorized by Nationwide Adjuster," which allegedly set forth all of the agreements Wood had purported to make with PHR. Nationwide asserts that, as a result of Wood's alleged wrongful actions, it was bound to pay out an amount in excess of twenty-one million dollars to PHR. Nationwide alleges that, had Wood not exceeded his contractual authority, it would have only paid approximately $5.3 million to cover PHR's claims.

Based on Wood's alleged wrongful actions, Nationwide filed a Complaint against NCA, McLarens, and Wood,[1] alleging breach of contract, negligence, breach of fiduciary duty, and negligent supervision of Wood by NCA and McLarens. This matter is now before the Court on McLarens' and Wood's Motion to Dismiss, and NCA's Motion for Partial Summary Judgment with respect to Nationwide's claims of negligence, breach of fiduciary duty, and negligent supervision.

## III. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to in-

1. Nationwide filed its Complaint with the Court of Common Pleas in Franklin County, Ohio on August 26, 1999. On October 4, 1999, the Defendants filed a Notice of Removal to this Court, based on this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

terrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir.1993) (citation omitted). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (finding summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

**B. 12(b)(6) Motion to Dismiss**

In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994). While liberal, this standard of review does require more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Scheid v. Fanny Candy Shops Inc.* 859 F.2d 434, 437, (6th Cir.1988).

## IV. ANALYSIS

### A. Choice of Law

■ Defendant NCA contends that Ohio law applies to this controversy. Defendants McLarens and Wood, who raised the issue of choice of law, assert that Virginia law applies. The Court finds that, for the reasons set forth below, Virginia law applies. The Court recognizes, however, that, because of the relevant similarities in the laws of the two states, the result herein would be no different under Ohio law.

A federal court whose jurisdiction is based upon diversity must apply the choice of law rules of the state in which it sits. *Charash v. Oberlin College*, 14 F.3d 291, 296 (6th Cir.1994) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and *Tele–Save Merchandising Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir.1987)). Therefore, Ohio choice of law rules apply. The Ohio Supreme Court has held that the Restatement (Second) of Conflicts governs choice of law questions in this state. *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 474 N.E.2d 286, 288–89 (1984). The Court, therefore, turns to the Restatement provisions regarding choice of law for tort actions, as the only claims at issue in these motions are tort claims.

Section 145 of the Restatement (Second) of Conflicts states that the rights and liabilities of parties to a tort action are determined by the law of the state with the most significant relationship to the occurrence and the parties. To determine which jurisdiction has the most significant relationship to the lawsuit, the Court must examine the following factors:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICTS § 145(2) (1971).

Turning to the facts of this case, it is clear that Virginia has the most significant relationship to the parties and events herein. The place of the alleged tort injury is Virginia, as that is where Wood allegedly created Nationwide's inflated indebtedness to PHR. Because Wood acted with regard to PHR in Virginia, Virginia is also where NCA and McLarens allegedly negligently supervised Wood. Furthermore, although Nationwide has its headquarters in Ohio, no other party is either incorporated in Ohio or has its principal place of business here. All of the parties, however, do business in Virginia, and McLarens and Wood were physically located in Virginia at the time of the incidents giving rise to this cause of action. Therefore, the Court finds that Virginia law applies to the Motion for Summary Judgment and the Motion to Dismiss.

### B. Nationwide's Tort Claims

■ Under Virginia law, no tort action can be based solely on a negligent breach of contract. *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344, 347 (Va.1998) (dismissing the plaintiff's claim for constructive fraud where the essence of the claim was negligent performance of contractual duties and was, therefore, not actionable in tort). "If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort." *Id.* Although, in some circumstances, a plaintiff may be able to allege a breach of contract and a tortious breach of duty, the duty negligently breached must be a common law duty, not

one existing between the parties solely by virtue of a contract. *Id.* (citing *Foreign Mission Bd. v. Wade*, 242 Va. 234, 409 S.E.2d 144, 148 (1991)).

Nationwide asserts that all of the Defendants were bound by the terms and conditions of its contract with NCA. Thus, for Nationwide to proceed on both its contract and tort claims, it must set forth some independent duty that was breached with respect to each tort for which it has brought a claim. Despite this clear rule of law, Nationwide maintains that the Defendants were agents of Nationwide, and that, therefore, it may pursue both its contract and tort claims. *See* RESTATEMENT (SECOND) OF AGENCY § 401 cmt. a (1958) (stating that when a paid agent acts negligently so as to cause a loss to the principal, the principal may have an action either in tort or contract). The Court disagrees with Nationwide's contention. Assuming that the Defendants were, in fact, Nationwide's agents, Nationwide must nonetheless set forth some specific duty that the Defendants, as agents or otherwise, breached, in order to support its tort claims.[2]

### 1. Negligence

To assert a successful claim of negligence under Virginia law, a plaintiff must show (1) that the defendant owed a legal duty to the plaintiff; (2) that the defendant breached that duty; and (3) that as a result of that breach, the defendant proximately caused the plaintiff's injury. *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 523 S.E.2d 826, 830 (2000) (citations omitted). The plaintiff must also prove that the legal duty owed to it is one arising from common law, "separate and apart from" any contractual duty. *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 509 S.E.2d 494, 497 (1999) (stating that to establish a cause of action for negligence, "the duty alleged to have been tortiously breached must be a common law duty," not solely a contractual duty); *Foreign Mission Bd. v. Wade*, 242 Va. 234, 409 S.E.2d 144, 148 (1991) (citing *Spence v. Norfolk & W.R. Co.*, 92 Va. 102, 22 S.E. 815 (1895)).

Virginia courts have held that when professionals fail to provide proper service to those who hire them, the plaintiffs are precluded from pursuing negligence claims in addition to, or in lieu of, breach of contract claims if the duties that are breached do not arise separate and apart from the contractual duties owed. In *Wilbanks v. Watson*, 53 Va. Cir. 267, 2000 LEXIS 177 (Sept. 15, 2000), for example, the court ruled that the plaintiffs could proceed only on a breach of contract claim after a surveyor, who had been hired by the settlement agent through whom the plaintiffs were purchasing a home, failed to indicate that certain appurtenances crossed the plaintiffs' property line and encroached onto someone else's property. *Id.* at 268, *3–4. In so ruling, the court recognized that the surveyor's failure to meet the standard of care that was customary in his profession was not a breach of a common law duty, but rather, a breach of a duty that arose only by virtue of the contract to perform the survey. *Id.*

Similarly, in *Jefferson Loan Office, Inc. v. Midlothian Electronics, Inc.*, 32 Va. Cir. 81, 1993 LEXIS 811 (September 22, 1993), the court ruled that the plaintiffs could not pursue a negligence claim where the defendant breached its contractual obligation to provide twenty-four-hour monitoring of the plaintiff's security system. *Id.* (allowing only a breach of contract claim after the defendant failed to recognize that the

---

**2.** The Court notes that while Nationwide has cited cases in which various federal courts adopted the Restatement rule that a principal may sue its agent in either tort or contract simply by virtue of the agency relationship, it has not cited, nor is the Court aware of any Virginia case that has adopted this rule.

security system had been turned off at a particular time, and, while it was off, the plaintiff's building was broken into). The negligence claim, based on the defendant's alleged failure to use ordinary care in protecting the plaintiff's property, was precluded because any duty on the defendant to protect the plaintiff's property arose solely by virtue of the contract. *Id.* at 82, *3–4 (stating that "but for the contract, no duty by defendant to plaintiff would have existed").

Nationwide bases its negligence claim on Wood's alleged breach of his duty to exercise the degree of skill and care that would ordinarily be exercised by one performing similar claims adjusting functions under the circumstances. Specifically, Nationwide asserts that Wood breached his duty by taking actions that exceeded the scope of his authority and by failing to follow accepted practices in the industry of claims adjusting. It contends, furthermore, that NCA and McLarens are vicariously liable for Wood's actions.

Like the claims in *Wilbanks* and *Jefferson Loan Office*, Nationwide's claims are essentially claims of negligent performance of contractual duties. Each of Wood's allegedly negligent actions (i.e. purporting to make coverage determinations and settle PHR's claims before ascertaining the nature and extent of PHR's coverage) was a violation of a specific contractual duty. *See* discussion *supra* Part II (setting forth specific contractual provisions from the claims adjuster Guidelines). Furthermore, as in *Wilbanks*, Wood's alleged failure to act in accordance with industry standards, or with the degree of care that would ordinarily be exercised by a claims adjuster under similar circumstances, arises only by virtue of his contractual obligations. But for the contract between Nationwide and NCA, and, in turn, between NCA and McLarens, Wood would have had no duty to Nationwide whatsoever.

Therefore, because the allegations supporting Nationwide's negligence claim arise from the contract, and Nationwide has set forth no independent duty that was breached by the Defendants, the Court **GRANTS** the Defendants' Motions for Summary Judgment and Dismissal as to the Plaintiff's claim of negligence.

### 2. Breach of Fiduciary Duties

A fiduciary duty exists when "special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592, 595 (1984) (citation omitted). Not all business relationships, however, result in fiduciary relationships. "Just because there is a business relationship even if it is of a long duration and involves large sums of money, it does not automatically create a fiduciary relationship. Likewise, it is not a fiduciary relationship just because one party to the transaction unilaterally decides to place his trust in the other party casting aside all caution and relying totally on the other party." *Pierce Financial Corp. v. Sterling Cycle, Inc.*, 1992 WL 884734, at *5 (Va. Cir. June 15, 1992).

█ Generally, contracts between sophisticated commercial entities, negotiated at arm's length, do not create fiduciary duties between the parties. *Guaranty Sav. and Loan Ass'n v. Ultimate Sav. Bank, F.S.B.*, 737 F.Supp. 366, 370 (W.D.Va.1990). Fiduciary duties may arise, however, if the parties expressly specify such duties as part of the contract. Thus, the determinative factor is the specific language of the contract. *Id.* at 371. For example, in *Guaranty Sav. and Loan Ass'n*, the court found that a fiduciary duty was created where the contract stated, "Seller is not to act as agent for the Buyer, but is to act in all matters hereunder for

the Buyer as an independent contractor, but also as a trustee with fiduciary duties to administer the loans hereunder ...." *Id.* On the other hand, that same court found that no fiduciary duty was created by a contract that made no explicit reference to a fiduciary relationship, but only referred to the parties as "independent contractors." *Id.*

■ Nationwide contends that the contract with NCA created a fiduciary relationship by virtue of language imposing ethical duties requiring special trust and confidence between the parties. Nationwide points specifically to provisions stating: (1) that adjusters should not accept assignments beyond their expertise; (2) that adjusters should avoid undue influence from others; and (3) that adjusters should promote and support the integrity of Nationwide. None of these provisions, however, specifically imposes a fiduciary duty upon NCA or its adjusters. Like the contract in *Guaranty Sav. and Loan Ass'n* that did not create a fiduciary relationship, the contract at issue here refers to the parties only as independent contractors, and makes no explicit reference to a fiduciary relationship. The Court finds that the contract between Nationwide and NCA did not create a fiduciary relationship between the parties.

■ Although Nationwide cannot assert a viable claim for breach of fiduciary duties based on the contract, the Court finds that Nationwide has presented sufficient evidence to survive the Defendants' motions based on a tortious breach of fiduciary duties. To plead such a claim properly, the duty must arise independent of the contract. *Vanguard Military Equipment Corp. v. David B. Finestone Co., Inc.,* 6 F.Supp.2d 488, 492 (E.D.Va.1997) (citing *Foreign Mission Board v. Wade,* 242 Va. 234, 409 S.E.2d 144, 148 (1991)).

As stated previously, Nationwide asserts that the Defendants were its agents. Under Virginia law, "[a]gency is defined as a fiduciary relationship arising from 'the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act.'" *Hartzell Fan, Inc. v. Waco, Inc.,* 256 Va. 294, 505 S.E.2d 196, 200 (1998) (quoting *Allen v. Lindstrom,* 237 Va. 489, 379 S.E.2d 450, 454 (1989)). Thus, while the fact that the Defendants may be Nationwide's agents was insufficient to give rise to an independent duty to support Nationwide's negligence claim, the fact of the agency relationship itself does, by definition, give rise to an independent fiduciary duty.

The Defendants deny that an agency relationship existed between the parties, pointing primarily to the language in the contract between Nationwide and NCA that specifies that the parties thereto were independent contractors. It is the actual relationship between the parties, however, not the contractual language, that controls the determination of whether the Defendants were Nationwide's agents. *Hartzell,* 505 S.E.2d at 201. Nationwide contends that it had sufficient control over the Defendants to render them agents, while the Defendants deny that Nationwide had such control over the way they performed their claims adjusting.

Because a genuine issue of material fact remains as to whether or not the Defendants were, in fact, Nationwide's agents, thus giving rise to an independent fiduciary duty, the Court **DENIES** the Defendants' Motions for Summary Judgment and Dismissal as to the Plaintiff's claim for breach of fiduciary duties.

### 3. Negligent Supervision

The Defendants contend that Nationwide has failed to present a valid tort claim against Defendant Wood and that, therefore, the claim of negligent supervision alleged against NCA and McLarens must

fail as a matter of law. The Court has found, however, that Nationwide has, in fact, properly pled a breach of fiduciary duties based on the alleged agency relationship between Nationwide and all of the Defendants. Therefore, because the Defendants' arguments in regard to this claim are without support, the Court **DENIES** the Defendants' Motions for Summary Judgment and Dismissal as to Nationwide's claim for negligent supervision.

#### 4. Punitive Damages [3]

In each of their respective motions for partial summary judgment and dismissal, the Defendants moved to exclude punitive damages from the Plaintiff's case based on their assertion that the Plaintiff's only valid claim is for breach of contract. Punitive damages are not recoverable for a breach of contract case unless the claim involves an independent, willful tort. *Kamlar Corp. v. Haley,* 224 Va. 699, 299 S.E.2d 514, 518 (1983) (citation omitted). As discussed above, the Court finds that Nationwide has properly alleged a claim for a tortious breach of a fiduciary duty arising independent of the contract. Therefore, Nationwide is not precluded from pursuing punitive damages, and the Defendants' motions are **DENIED** in this respect.

### V. CONCLUSION

Based on the foregoing analysis, the Defendants' Motions for Summary Judgment and Dismissal are **GRANTED** as to the Plaintiff's claim of negligence, and are **DENIED** as to the Plaintiff's claims for breach of fiduciary duties, negligent supervision, and punitive damages.

**IT IS SO ORDERED.**

---

3. Although Nationwide did not explicitly request punitive damages in its Complaint, it contends that it need not do so as long as such damages are warranted under the law.