**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1299
_____

SPORTS ENTERPRISES, INC., an Oregon corporation,

Appellant

v.

MARVIN GOLDKLANG, an individual; M.S. GOLDKLANG &
CO., INC., a New Jersey corporation

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2:23-cv-02198)
District Judge: Honorable Jamel K. Semper

_____

Argued on November 12, 2025

Before:  RESTREPO, McKEE, and AMBRO, <u>Circuit Judges</u>

(Opinion filed: January 21, 2026)

Geoffrey S. Brounell
Mohammad B. Pathan
Davis Wright Tremaine
1251 Avenue of the Americas
21st Floor
New York, NY 10020

Alexander M. Naito **(Argued)**
Tarlow Naito & Summers
2014 NE Broadway
Portland, OR 97232

*Counsel for Appellant*

Martin B. Gandelman
Eric T. Kanefsky (**Argued**)
Philip J. Morrow
Kevin Musiakiewicz
Calcagni & Kanefsky
1085 Raymond Boulevard
One Newark Center, 18th Floor
Newark, NJ 07102

Christopher J. Gramiccioni
Kingston Coventry
522 Washington Blvd
Suite 2
Sea Girt, NJ 08750

*Counsel for Appellees*

## OPINION OF THE COURT

**AMBRO**, Circuit Judge

Sports Enterprises, Inc. (SEI) owns the Salem-Keizer Volcanoes, an Oregon-based minor league baseball club. For years, the Volcanoes maintained a lucrative affiliation with the San Francisco Giants. That changed in 2020 when Major League Baseball (MLB) overhauled its relationship with the minor leagues. It allowed its professional teams to cut affiliations with over forty minor league teams, and the Giants dropped the Volcanoes.

SEI blames Marvin Goldklang, a minority owner of an MLB team who negotiated with MLB on the minor leagues' behalf. It alleges he schemed to shrink minor league baseball's role in America's national pastime for his personal financial gain. Even were that true, SEI fails plausibly to allege that Goldklang owed any fiduciary duty. We thus affirm the District Court's order dismissing the complaint for failure to state a claim.

# I.      BACKGROUND[1]

To bargain collectively with MLB on their behalf, minor league teams formed the National Association of Professional Baseball Leagues, Inc. (Association) in 1901. The arrangement produced results for minor league teams. For over a century, MLB agreed to guarantee professional affiliations for each minor league club under that organization's umbrella. To do so, it used a series of written agreements called Professional Baseball Agreements (PBAs) that were set to expire roughly every ten years. Like clockwork, every decade since 1901 the parties renewed the PBA with the same basic bargain providing each club with a guaranteed affiliation.[2] That ended in 2020 when negotiations to renew the then-existing PBA fell apart. In its place, a smaller group of minor league teams struck a new deal with MLB, cutting teams like the Volcanoes out of the picture. To date, there is no agreement between MLB and the Association, and baseball's minor league world is smaller now for it.

For 26 years prior to 2020, the Volcanoes maintained a professional affiliation with the San Francisco Giants. Though it was nominally a relationship of independent contract, the PBA set out the terms and conditions of the affiliation. Association rules prevented SEI from negotiating with MLB

---

[1] We draw the facts discussed in this section from the allegations in SEI's complaint. We accept them as true and view them in the light most favorable to SEI. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).

[2] There was a hiccup in the 1990s that delayed one PBA renegotiation cycle, but it did not result in a reduction in guaranteed affiliations for any minor league clubs.

4

directly concerning those terms, and thus, on SEI's telling, the arrangement left the Volcanoes no choice but to depend on the Association to look out for its interests and protect its affiliation with the Giants.

Enter Marvin Goldklang. He is a minority owner of the New York Yankees and the majority owner of the Goldklang Group, which had a majority ownership stake in three minor league clubs—the Charleston RiverDogs, the Hudson Valley Renegades, and the St. Paul Saints—during the PBA renegotiation period. Goldklang was also on the Association's Board of Trustees and a member of a committee assembled to handle the 2020 PBA renegotiation (Negotiating Committee). SEI alleges he worked behind the scenes to tank the 2020 PBA renegotiation, effectively ending the affiliation between the Volcanoes and the Giants.

The operative complaint raises only a breach-of-fiduciary-duty claim. The District Court found that SEI failed to allege plausibly the existence of a fiduciary relationship and dismissed the complaint. It appeals that decision.

## II.     ANALYSIS[3]

"We review de novo a district court's grant of a motion to dismiss for failure to state a claim under [Federal] Rule [of Civil Procedure] 12(b)(6)." *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). "To survive a Rule 12(b)(6) motion, a complaint must set forth enough factual allegations to 'state a claim to relief that is

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291.

5

plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## A. Whether Goldklang Owes Fiduciary Duties under Florida's Non-Profit Law

The Association is a Florida non-profit corporation. SEI argues that Goldklang thus owed fiduciary duties to it under Fla. Stat. § 617.0830 (the State's non-profit law). The provision states that:

> (1) A director shall discharge his or her duties as a director, including his or her duties as a member of a committee:
>    (a) In good faith;
>    (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
>    (c) In a manner he or she reasonably believes to be in the best interests of the corporation.

Goldklang does not dispute that, as a member of the Association's Board of Trustees, he was a "director" within the meaning of the statute, and that he owed fiduciary duties to the Association under that law. SEI says his duties do not stop there by asserting that the statute also creates fiduciary duties between Goldklang and the Association's members. In Florida, a non-profit corporation "may have one or more classes of members," or "may have no members at all." Fla. Stat. § 617.0601(1)(a). Like owning stock in a for-profit corporation, being a member carries with it a set of rights and obligations set out by the non-profit's articles of incorporation and

6

bylaws.[4] SEI alleges that it is a member of the Association,[5] and therefore, on its reading of the statute, it had its own fiduciary relationship with Goldklang.

Florida's Supreme Court has not addressed whether directors owe fiduciary duties to members under the non-profit law. Without the benefit of its guidance, we begin our analysis with the statute's text. To repeat, it states that "[a] director shall discharge his . . . duties . . . [i]n a manner he . . . reasonably believes to be in the best interests of the corporation." Fla. Stat. § 617.0830(1)(c). It does not say he owes duties to the corporation's members. "When the words of a statute are plain and unambiguous and convey a definite meaning, courts have no occasion to resort to rules of construction." *Nicoll v. Baker*, 668 So.2d 989, 990-91 (Fla. 1996). Hence, we do not engraft onto the statute words that create a fiduciary duty of non-profit directors to Association members.[6]

---

[4] Florida defines a member as "one having membership rights in a corporation in accordance with the provisions of its articles of incorporation or bylaws or the provisions of [the non-profit law]." Fla. Stat. § 617.1401(12).

[5] Goldklang disputes that SEI is a member of the Association, arguing that the Association's bylaws confer membership solely to the leagues that comprise the organization, and not the individual clubs that compete in those leagues, such as SEI's Volcanoes. Because we hold that the non-profit statute does not create a fiduciary relationship between directors and members, we need not address Goldklang's argument on this point.

[6] We would reach the same conclusion applying federal rules of statutory construction. The statute's express mention of the "corporation," without more, implies the exclusion of other

7

SEI challenges our conclusion by pointing to Fla. Stat. § 607.0830 (the State's for-profit law). It governs a corporate director's fiduciary duties in the for-profit context and uses the same language as the non-profit law, providing that a for-profit director must discharge his duties "[i]n a manner he . . . reasonably believes to be in the best interests of the corporation." Fla. Stat. § 607.0830(1)(b). SEI points out that Florida courts extend a for-profit director's fiduciary duties to the corporation's shareholders. *See Taubenfeld v. Lasko*, 324 So.3d 529, 538 (Fla. Dist. Ct. App. 2021). It asks us to read the non-profit statute the same.

SEI's argument does not persuade us. Florida common law—not its for-profit statute—creates the for-profit shareholder's cause of action. *See Fox v. Pro. Wrecker Operators of Fla., Inc.*, 801 So. 2d 175, 180 (Fla. Dist. Ct. App. 2001) ("[A]t common law the directors of a private corporation are considered by equity to be in a fiduciary relationship with the corporation and its shareholders . . . ."). Because the for-profit statute is not the source of the claim, we decline to read a parallel cause of action into the non-profit law merely because the two statutes use identical text.

Moreover, no court to our knowledge has held that Florida common law supplies an analogous cause of action to non-profit members. In a concurrence, Judge Edward LaRose of Florida's Second District Court of Appeal suggested that

---

categories of fiduciary obligees. *See United States v. Nasir*, 17 F.4th 459, 471-72 (3d Cir. 2021) ("As a familiar canon of construction states, . . . the expression of one thing is the exclusion of the other.").

such a cause of action does not exist.[7] *Sharma v. Ramlal*, 76 So.3d 955, 956-57 (Fla. Dist. Ct. App. 2011) (LaRose, J., concurring). But there is no state court decision squarely addressing the issue. SEI argues the Fifth District Court of Appeal's decision in *Fox* compels us to carry over a for-profit shareholder's common law rights to supply SEI with a direct breach-of-fiduciary-duty claim here. In that case, the Court borrowed common law principles from the for-profit context to permit non-profit members to bring derivative suits notwithstanding the non-profit law's silence on the topic. *Fox*, 801 So.2d at 179-80.[8] While SEI's suit is not a derivative one, we still consider whether *Fox's* reasoning applies here, and if so, whether other sources of Florida law compel a different result from the one it suggests.

To evaluate *Fox's* reasoning, we begin, as that Court did, with a brief detour into Florida's 1993 amendments to its non-profit law. Prior to those amendments, non-profit members "could bring a derivative action as a matter of statutory law." *Larsen v. Island Devs., Ltd.*, 769 So.2d 1071, 1072 (Fla. Dist. Ct. App. 2000). They could do so because

_____

[7] The majority decided that case on separate grounds and did not reach the question. *Sharma v. Ramlal*, 76 So.3d 955, 956 (Fla. Dist. Ct. App. 2011).

[8] The nature of the alleged injury determines whether a claim is direct or derivative. *Fox*, 801 So.2d at 179. "[I]f the injury is to the corporation, and only indirectly harms the shareholder, the [shareholder's] claim must be pursued as a derivative claim." *Id*. SEI alleges an injury to itself, not the corporation, and thus its claim is direct. Its counsel conceded as much at oral argument. And in any event, SEI has not complied with the pre-suit requirements for filing a derivative claim codified at Fla. Stat. § 617.07401.

Florida law at the time made the provisions of its for-profit law applicable to non-profit corporations, and the for-profit law permitted shareholder derivative actions. *Id*. The 1993 amendments eliminated the statutory "bridge" between the for-profit and non-profit laws, and with it any statutory source of a non-profit member's derivative cause of action against a director. *Id*.

*Larsen* was the first case to address the effect of the 1993 amendments. It held that non-profit members could still bring derivative actions despite the elimination of the statutory cause of action because the right "was not initially granted by the legislature," but instead "derived from the common law as an equitable remedy" for "relief from 'faithless directors and managers.'" *Id*. (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949)). The distinction between the for-profit and the non-profit context mattered little to the *Larsen* court. In fact, to support the proposition that non-profit derivative suits are a creature of the common law, it cited cases primarily from the for-profit context. *Id*.[9]

---

[9] *Larsen* cited three cases recognizing a for-profit shareholder's common law right to bring a derivative suit. The first is *Cohen*, in which the U.S. Supreme Court discussed the equitable roots of a shareholder derivative action. 337 U.S. at 548. The second is *Orlando Orange Groves Co. v. Hale*, whereby the Florida Supreme Court recognized the same. 144 So. 674, 678 (Fla. 1932). And the final one is *James Talcott, Inc. v. McDowell*, a decision of a lower Florida court also recognizing the same. 148 So.2d 36, 37 (Fla. Dist. Ct. App. 1962). The only case *Larsen* cited that explicitly recognized a non-profit member's common law right to bring a derivative suit is *Kirtley v. McClelland*, in which an Indiana state court

*Fox* was the second case to address the 1993 amendments, and it followed *Larsen's* lead but went further. In addition to finding *Larsen* "persuasive," it articulated policy-based reasons to treat for-profit shareholders like non-profit members. *Fox*, 801 So.2d at 180. The Court reasoned that "it makes little sense to us to place members of a no[n]-profit corporation . . . in the predicament of having to persuade the corporation's directors to take action on its behalf[,] . . .especially if they are the cause of the mismanagement." *Id*. And furthermore, it saw "no reason to treat members of no[n]-profit corporations differently from [shareholders] of for-profit corporations" with respect to the common law right to bring a derivative suit because there is "nothing about the remedy, which seeks redress for breach of fiduciary duty, that warrants distinctive treatment based upon corporate purpose." *Id*. To contend with the 1993 amendments, *Fox* chalked up the apparent elimination of the derivative cause of action to "legislative neglect or inattention." *Id*.

Before deciding whether to follow either case's rationale, there are reasons to read them on their own terms not to supply SEI with a direct action. For example, *Larsen* cites the U.S. Supreme Court's decision in *Cohen* as evidence of a non-profit member's common law right to bring a derivative suit. 769 So.2d at 1072. *Cohen* suggests that equity only permits derivative suits to proceed where a shareholder cannot

---

applied Indiana law to reach that result. 562 N.E. 2d 27, 29-30 (Ind. Ct. App. 1990). *Kirtley* is more candid than *Larsen* in its reasoning, acknowledging that "few examples of derivative actions brought by members of no[n]-profit corporations . . . can be found in Indiana case law," but concluding anyway that the same common law right should extend to non-profit members. *Id*.

bring a direct one. 337 U.S. at 548 ("Equity . . . allow[s] the [shareholder] to step into the corporation's shoes and . . . seek in its right the restitution he c[an]not demand in his own."). The case *Larsen* cites for the availability of the derivative suit at common law thus contemplates the unavailability of a direct suit in the very same breath. Perhaps then, to borrow language from *Fox*, there may be "reason to treat members of no[n]-profit corporations differently from [shareholders] of for-profit corporations" in the context of direct actions. 801 So. 2d at 180. But to us *Fox* paints broadly enough to render meaningless the suggestion from *Cohen*. The former reasoned that

> [b]ecause at common law the directors of a private corporation are considered by equity to be in a fiduciary relationship with the corporation and its shareholders, and because the right to assert a claim for the tort of breach of fiduciary duty derives from the common law, we agree with the conclusion reached in *Larsen* that the purpose for which a corporation is formed (profit versus nonprofit) is immaterial.

*Fox*, 801 So. 2d at 180 (citation modified). The suggestion of this syllogism is that Florida law supplies non-profit members all the same breach-of-fiduciary-duty claims as for-profit shareholders. Extending *Fox's* reasoning would compel recognizing a direct action against Goldklang to mirror the one SEI would have against him if the Association were a for-profit corporation.

Our inquiry is not done, however, merely because SEI's reading of *Fox* may be plausible. As a federal court applying state law, our role is to "predict how [the Florida Supreme Court] would decide the precise legal issues before us." *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445

12

(3d Cir. 1996). To be sure, we should not decline to follow the reasoning of an intermediate appellate state court without good reason. The general rule is to follow their opinions unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)). This is one such case.

Permitting SEI's suit to go forward based on *Fox's* reasoning would require us to look beyond the plain text of Florida's non-profit law to recognize a new dimension to a common law right. But Florida's Supreme Court admonishes lower courts to "read . . . statute[s] as written, for to do otherwise would constitute an abrogation of legislative power." *Nicoll*, 668 So.2d at 991. Following *Fox's* approach would put us out of step with that instruction.

The *Fox* court frames its decision as adding to a statute in order to cure a case of "legislative neglect or inattention." 801 So.2d at 180. Florida's Supreme Court warns not to change a statute's meaning based on legislative intent. *Daniels v. Fla. Dep't of Health*, 898 So.2d 61, 64 (Fla. 2005) ("When the statute is clear and unambiguous, courts will not look behind [its] plain language for legislative intent . . . ."). Accordingly, we decline to consider whether the non-profit law's omission of a direct cause of action for members is a product of the legislature's neglect or inattention. Even if the non-profit law revokes a common law right, as *Fox's* reasoning suggests it might, that is only more reason to construe it strictly. *Id.* (explaining that statutes "in abrogation of the common law . . . are to be strictly construed").

Our concerns about undermining legislative power are heightened by *Fox's* reliance on policy arguments. The policy rationale *Fox* articulates—to offer recourse to injured non-

profit members—may be a noble one. But courts have articulated policy reasons not to recognize a fiduciary relationship between non-profit members and directors. For example, in *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, the Kentucky Supreme Court rejected such a relationship because members "could have competing agendas, which may not be in the best interests of the [non-profit corporation]." 430 S.W.3d 229, 241 (Ky. 2013). We express no view on the strength of that policy argument. We note it, however, because we are reluctant to recognize a new dimension of a common law right against a backdrop of competing public policy considerations in a statute. *See also Squeri v. Mount Ida Coll.*, 954 F.3d 56, 67 (1st Cir. 2020) ("Common law courts are not free to impose additional and likely conflicting fiduciary duties not imposed by statute."). We instead leave the resolution of policy disagreements, as Florida's Supreme Court requires, to that State's legislature. We conclude that Florida law does not supply SEI with a direct cause of action for breach of fiduciary duty.

## B. Whether Goldklang Owes Express or Implied Fiduciary Duties

Setting Florida's non-profit statute aside, SEI argues in the alternative that Goldklang owed it express and implied fiduciary duties.[10] Express fiduciary duties can be created by

---

[10] For-profit case law suggests that a shareholder may only sue a director for breach of fiduciary duty "where there is a . . . statutory or contractual duty owed by the [director] to the . . . shareholder*." Strazzulla v. Riverside Banking Co.*, 175 So. 3d 879, 885 (Fla. Dist. Ct. App. 2015). Because we go on to hold that SEI fails plausibly to allege the existence of an express or implied fiduciary duty, we do not decide whether

14

contract or legal proceedings, whereas implied ones "are premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Cap. Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994). SEI's complaint fails to fit a fiduciary relationship under either theory.

SEI cannot point to a contract or legal proceeding that expressly creates fiduciary duties here. True, the National Association Agreement—which operates as the Association's bylaws—provides that "all decisions and actions of the Board of Trustees . . . must be made for the benefit of the National Association as a whole." App. 155. Goldklang was indeed on that Board. But the provision does not explicitly reference a fiduciary relationship, let alone create one specifically between Goldklang and SEI. *Cf. Nationwide Mut. Ins. Co. v. Nat'l Catastrophe Adjusters*, 185 F. Supp. 2d 854, 861 (S.D. Ohio 2022) (declining to find an express fiduciary relationship under Virginia law where a contract makes no "explicit reference" to one). The Agreement thus does not impose on Goldklang new fiduciary duties beyond the ones he already owes the Association under Florida's non-profit statute.[11]

---

*Strazzulla* confines a non-profit member to suing on a statutory or contractual theory.

[11] SEI points to other contractual language which it says "a factfinder could reasonably interpret . . . as creating fiduciary obligations." Opening Br. 37. It cites language providing that the Association exists "[t]o promote and protect the interests of such baseball leagues as may qualify to operate under this Agreement," App 319, and that "[t]he Board of Trustees shall have the power to determine policies and enact rules and regulations which shall be necessary and proper for carrying

15

SEI's implied fiduciary duty theory fares no better. An implied fiduciary relationship exists where "confidence is reposed by one party and a trust accepted by the other." *Cap. Bank*, 644 So. 2d at 518 (quoting *Dale v. Jennings*, 90 Fla. 234, 244 (Fla. 1925)). SEI does not allege a single transaction between SEI and Goldklang. And the only interactions it alleges between them are (1) that the Negotiating Committee wrote a letter to all the minor league clubs informing them that it had met with MLB and (2) that the Committee represented to the Association that it was making progress on a new PBA with MLB. These are simple progress updates. Without more, they do not show the existence of a fiduciary relationship.

---

into execution the objectives of the National Association, as expressed in this Agreement." App. 316. And it points to language, which we do not reproduce here in full, that sets out the Association President's powers to negotiate with MLB, limitations on the ability of Association leagues and clubs to negotiate with MLB, and requirements that leagues and clubs comply with decisions made by the Association President and the Board. SEI argues that "[t]hese contractual provisions give rise to a reasonable inference that both the National Association clubs and the [Board] members understood the [Board's] role included acting to further the economic interests of the member clubs, including SEI." Opening Br. 39. Even if true, nothing in the contractual language SEI cites creates an express fiduciary duty. We agree that a factfinder could conclude that a Board member like Goldklang "understood" that he holds significant power over the economic interests of the Association's leagues and clubs. But a factfinder could not find an express fiduciary duty based on inferences she draws from the agreement about how a Board member ordinarily would understand the nature of his role.

The theme of SEI's complaint is not that it had a relationship of trust and confidence with Goldklang, but that the Association's rules forced SEI to rely on the Negotiating Committee—and therefore, Goldklang—to protect its affiliation with the San Francisco Giants. But that is not enough. SEI must allege both "a degree of dependency on [its] side . . . and an undertaking on the other side to protect . . . or benefit" it. *Crusselle v. Mong*, 59 So. 3d 1178, 1181 (Fla. Dist. Ct. App. 2011) (quoting *Masztal v. City of Miami*, 971 So.2d 803, 809 (Fla. Dist. Ct. App. 2007)). The complaint does not allege any undertaking on Goldklang's part to benefit SEI, and thus it does not allege an implied fiduciary relationship.

\*      \*      \*

The District Court was correct to dismiss SEI's complaint for failing to state a claim. We hold that Fla. Stat. § 617.0830 does not create a fiduciary relationship between a director of a non-profit and its members. And even if Florida law permits SEI to pursue a breach-of-fiduciary-duty claim based on an express or implied theory, it does not allege sufficient facts to survive a Rule 12(b)(6) motion to dismiss. Accordingly, we affirm.